**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darrell W. THOMAS, Defendant–
Appellant.**

No. 97–1738.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 2, 1997.

Decided July 23, 1998.

Deirdre A. Durborow (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

John F. Garvey (argued), Leritz, Plunkert & Bruning, St. Louis, MO, Thomas L. O'Carroll, Chicago, IL, for Defendant–Appellant.

Before ESCHBACH, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

PER CURIAM.

Darrell Thomas sold crack cocaine to an informant in controlled transactions that were recorded on audio tape. Puzzlingly, the prosecutor charged Thomas with conspiracy to distribute drugs but not with their actual distribution. Conspiracy was much harder to establish, for the evidence was as consistent with intermittent sales as it was with criminal conspiracy, which is "an agreement to commit a crime other than the crime that consists of the sale itself." *United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir.1993) (en banc) (lead opinion); *United States v. Duff*, 76 F.3d 122, 126 (7th Cir.1996). Thomas's lawyer asked the judge to instruct the jury that repeat sales of drugs do not invariably establish conspiracy. The judge declined to give this buyer-seller instruction, and Thomas's lawyer then failed to object, as Fed. R.Crim.P. 30 requires. So our role is to determine whether plain error justifies a new trial. See *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 1548–49, 137 L.Ed.2d 718 (1997); Fed.R.Crim.P. 52(b). It

is a task that readily could have been avoided had the prosecutor leveled substantive rather than conspiracy charges. At oral argument the Assistant United States Attorney could not articulate any reason why the Department of Justice would pursue a problematic conspiracy accusation but not slam-dunk substantive charges, given that the penalties are identical and that the nature of the crime alleged does not affect the introduction of evidence under the co-conspirator exception to the hearsay rule. See *Duff*, 76 F.3d at 124. But it is not our task to decide whether prosecutorial and judicial resources have been squandered by poor charging decisions; we must resolve the questions presented in consequence of those decisions.

Evidence at trial depicts Thomas as a broker, finding drugs from dealers in Charleston, Missouri, for resale to people who were having problems with their usual sources. Mable Jones, the informant, was one such person. Jones specialized in selling drugs at public housing projects in Cairo, Illinois, and toward the end of July 1995 her cupboard was bare. The lack of inventory troubled her, because her peak demand came at the start of each month when welfare and Social Security checks are distributed. A shortfall of drugs coincided with her arrest, and Jones decided to earn a reduction in her sentence by helping agents work back up the chain of distribution. Thomas charged Jones $600 for 12+ grams of wax shaved to look like cocaine (a mistake for which he blamed his own suppliers) before selling her small quantities of crack. Palming off bogus merchandise is not a prevalent way to treat business partners, which conspirators are. Jones told police that she had bought small quantities of drugs from Thomas once or twice before the supervised transactions. These sales, the sale of wax on August 1, 1995, plus two supervised transactions in which cocaine changed hands (one lot for $300 on August 2, another for $250 on August 8), coupled with tape recordings in which Jones and Thomas spoke a common drug lingo, are the support for the jury's conclusion that Thomas, Jones, and three other persons (Jones's husband Fred, her daughter Shirley Smith, and Smith's boyfriend Dennis Mallard) conspired to distribute cocaine.

None of the evidence suggests that Thomas had any stake in Jones's profits from the Cairo market; all deals were cash on the barrelhead. None of the evidence necessarily establishes that Thomas and Jones agreed to "commit a crime other than the crime that consists of the sale itself." Their transactions were episodic. A frequent customer at McDonald's does not agree to eat his next burger there, rather than at Burger King, and although an enduring commercial relation may support an inference that agreement has been reached, see *Direct Sales Co. v. United States*, 319 U.S. 703, 713, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943); *Lechuga*, 994 F.2d at 350, the jury should be told that *agreement*—the crime of conspiracy—cannot be equated with repeated transactions. This is the office of the buyer-seller instruction. It reminds juries that distribution of drugs is not itself conspiracy, although a history of transactions may be evidence of conspiracy. A jury readily could have concluded that Thomas and Jones dealt without any express or implied undertaking to commit any future crime cooperatively, making them substantive offenders but not conspirators. The district court therefore erred in declining to give a buyer-seller instruction. See *United States v. Meyer*, 149 F.3d 535 (7th Cir. 1998). And the error was plain, in the sense that it is obvious when you think about it. (This is the meaning *Johnson and United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), give to the word "plain.") The district judge said during the instruction conference that he would not give a buyer-seller instruction because:

[H]ypothetically in a vacuum, yes, a seller can be a seller without being a member of a conspiracy. As an abstract principle, I think that's true, but you have to look at the factual situation, and in this factual situation that we have here, there is evidence from which the jury could find that this was not an isolated sale.... [C]learly there is evidence that this was an ongoing relationship, number one; that the defendant knew or should have known that the Joneses were buying these drugs for resale. There is evidence from which the jury could find that the Joneses were sell-

ing the drugs to other people. So, you know, it's not just a mere ongoing relationship of buying.... There's no doubt that there is evidence, undisputed evidence, that goes beyond a mere buyer-seller relationship.

This passage implies that the accused is not entitled to an instruction if the jury *could* find that he joined a conspiracy (indeed, if the jury could find that the sale was "not ... isolated"). Not at all. If a jury rationally could find in the defendant's favor on some material issue, then the jury must be instructed on that subject. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *United States v. Douglas,* 818 F.2d 1317, 1320–21 (7th Cir.1987). And to the extent the judge believed that repeated transactions automatically establish a conspiracy, that belief is mistaken for the reasons *Lechuga* gives. Spot-market transactions do not necessarily prove agreements to commit future crimes.

Although Rule 52(a) does not require the court of appeals to grant relief whenever plain error has occurred, see *Olano,* 507 U.S. at 735–36, 113 S.Ct. 1770, the prosecutor does not contend that this case is an appropriate one in which to exercise discretion against the accused. Thomas therefore is entitled to a new trial.

■ One other subject calls for brief comment. Circuit Rule 30(b)(1) requires an appellant to include, in the appendix to the brief, "[c]opies of any ... opinions or orders in the case that address the issues sought to be raised." Although this rule does not explicitly require the inclusion of transcribed oral statements in which the judge resolves the disputed issue, we concluded a decade ago that it does. See *United States v. White,* 888 F.2d 490, 495 (7th Cir.1989). See also *In re Galvan,* 92 F.3d 582, 584–85 (7th Cir. 1996). Thomas's lawyer omitted from the appendix to his brief the portions of the jury instruction conference in which the district judge made the disputed rulings. It may well be that counsel was unacquainted with his obligations under Rule 30, for his brief concludes with this representation:

I, John F. Garvey, Jr. hereby affirm and state that all materials required by Circuit Rule 30 have been included either on [sic] the Record of [sic] Appeal, or in Appellant's Separate index [sic] which has been filed along with Appellant's Brief.

This may have been meant as the statement required by Circuit Rule 30(c), but it does not comply with that rule. We require counsel to state that they have included all materials that Circuit Rule 30(a) and (b) require. Opinions and rulings bound with the briefs are ready to hand when the judges prepare for oral argument. That all materials are in the *record* is unhelpful, and we haven't a clue what a "Separate index" might be (no document bearing that name was filed). If having the materials in the record were enough, Circuit Rule 30 would be pointless. The Clerk's Office should not have accepted a brief with this non-complying certificate, which all but proclaimed a departure from Rule 30(a) and (b).

■ *Galvan* warns counsel that in criminal cases monetary sanctions are the consequence of failure to furnish the opinions, orders, and rulings being contested. See *United States v. Evans,* 131 F.3d 1192 (7th Cir.1997). Because ambiguity in the rule may have contributed to the shortcoming here, we do not think a financial exaction appropriate. As in *Galvan,* an admonition to pay close attention to the circuit rules should suffice. Meanwhile the rule was amended effective December 1, 1997, to eliminate the ambiguity. Circuit Rule 30(b)(1) as amended requires counsel to include in the appendix to the brief "[c]opies of any other opinions, orders, or oral rulings in the case that address the issues sought to be raised. If the appellant's brief challenges any oral ruling, the portion of the transcript containing the judge's rationale for that ruling must be included in the appendix." Good appellate advocates do this without the need for compulsion.

REVERSED AND REMANDED.

EASTERBROOK, Circuit Judge, concurring.

Rule 52(b) says that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the

attention of the court." "May be", not "must be". A court has discretion to affirm even when a plain error has been committed. Reversal on account of a plain error is appropriate only if a second trial is apt to come out differently. It seems to me unlikely that Thomas can benefit from a remand, for if the prosecution replaces the conspiracy charge with a substantive charge he will have no viable defense.

If in order to convict Thomas of conspiracy the jury necessarily found all of the elements of the substantive offense, we could relabel the offense of conviction ourselves. *Rutledge v. United States,* 517 U.S. 292, 306, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). Distribution of cocaine is not technically a lesser included offense of conspiracy to distribute cocaine, because it is possible to conspire in violation of 21 U.S.C. § 846 without committing any overt act, let alone selling drugs. *United States v. Shabani,* 513 U.S. 10, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). But in this case the prosecution's theory was that agreement could be inferred from multiple sales of crack cocaine. To convict Thomas in light of the evidence it heard and instructions it received, the jury must have found beyond a reasonable doubt that Thomas distributed cocaine to Jones. At oral argument a judge asked Thomas's lawyer what the point of a second trial would be. He replied that perhaps witnesses would die between now and then, making the prosecution's task harder. Even if they did, the result would not change given the tape recordings—and anyway it is not the function of the plain-error doctrine to give the defendant lucky breaks. The jury instructions were faulty, but the outcome of the trial was a just response to Thomas's activities.

This is not to say that a court of appeals could *convict* Thomas of distributing cocaine. He has not been charged with or tried on that offense, and he is entitled to the benefit of both indictment and trial no matter how obvious his guilt. Summary judgment does not exist in criminal cases. See *United States v. Ladish Malting Co.*, 135 F.3d 484, 490–91 (7th Cir.1998). But when deciding whether the proceedings during trial were so flawed that a court should relieve a defendant of his forfeiture, judges ought to consider what is apt to happen next. If impeccable process will lead to another guilty verdict and the same sentence, why not say that no injustice has been done and let the first verdict stand?

Perhaps there is an answer to this line of reasoning, but Thomas has not given it. And the reason for this omission is that the United States Attorney did not advance an argument along the lines I have sketched—or indeed any argument bearing on the exercise of our discretion under Rule 52(b). Forfeitures by the prosecutor are at least as conclusive as forfeitures by the defense, because there is no plain-error escape hatch for prosecutorial oversights. The possibility of considering the likely outcome of a new trial on a different charge as an element in the exercise of discretion under Rule 52(b) is sufficiently novel that it should not be pursued without giving the accused an opportunity to reply. So I join both the judgment and the opinion of the court.