In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-2348, 99-2622, 99-2623, 99-3093

United States of America,

Plaintiff-Appellee/Cross-Appellant,

v.

Jim Gee and William C. Norris,

Defendants-Appellants/Cross-Appellees.

Appeals from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:93-CR-13RM--Robert L. Miller, Jr., Judge.

Argued April 3, 2000--Decided September 11, 2000

Before Flaum, Chief Judge, and Bauer and Williams,
Circuit Judges.

Williams, Circuit Judge.  The United States
government charged William C. Norris and Jim Gee
in a 32-count indictment in connection with a
scheme to assist in the unauthorized reception of
cable television signals./1 Before submitting
the case to the jury, the government dropped two
of the counts against Norris. The jury returned
guilty verdicts on all remaining counts.
Defendants appeal their convictions and their
sentences. The government appeals defendants'
sentences. For the reasons stated below, we
reverse defendants' convictions on mail fraud,
wire fraud, and conspiracy. We affirm Norris's
conviction for assisting unauthorized reception
of cable service, but we remand for resentencing
consistent with this opinion.

I

Little of the evidence at trial was in dispute.
The government charged, and the defense readily
admitted, that Gee and Norris were involved in
the production of equipment that buyers could use
to transform cable television converters into
devices that could descramble all encrypted cable
programming. A cable television subscriber who
acquires a descrambler from a source other than
the cable company can access premium programming
without paying the cable company any additional

fees. The evidence showed that Bryan Corrigan, a cooperating witness, developed chips and modules that could modify cable converter boxes to descramble all encrypted cable programming. Gee took Corrigan's work product and sold it to Norris and other after-market dealers. Norris sold these chips and modules, and cable boxes modified by these chips and modules, to home viewers. These devices allow the user to, among other things, descramble and view premium cable television channels without the cable provider's permission.

A jury found Norris guilty of thirteen counts of wire fraud, violating 18 U.S.C. sec. 1343; five counts of mail fraud, violating 18 U.S.C. sec. 1341; seven counts of misdemeanor assisting unauthorized reception of cable service and four counts of felony assisting unauthorized reception of cable service, violating 47 U.S.C. sec. 553(a)(1); and one count of conspiracy, violating 18 U.S.C. sec. 371. The same jury found Gee guilty of ten counts of wire fraud and one count of conspiracy.

The district court sentenced Norris to 37 months of home confinement and imposed a fine and special assessments totaling $16,325. The court sentenced Gee to 37 months of imprisonment and imposed a fine and special assessments totaling $8,050.

II
A. Material Falsehood

Norris and Gee claim that their convictions on wire and mail fraud should be reversed because the government did not properly allege or prove materiality and because the court did not properly instruct on materiality. We review de novo the sufficiency of an indictment. See United States v. Agostino, 132 F.3d 1183, 1189 (7th Cir. 1997).

In 1999, the Supreme Court ruled that a "scheme to defraud" under the wire and mail fraud statutes must include the element of a material falsehood. See Neder v. United States, 527 U.S. 1, 25 (1999). "[A] false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" Id. at 16 (quoting Kungys v. United States, 485 U.S. 759, 770 (1988)).

Earlier in this case, in 1997, defendants filed an unsuccessful motion to dismiss, arguing, inter alia, that the indictment failed "to allege any false or misleading statements" to customers or cable companies. In response to that motion, the

government acknowledged that the indictment does not base fraud charges on any misleading statements or fraudulent omissions./2 Under the law at that time, the district court correctly ruled that a material falsehood was not an essential element of the wire or mail fraud statutes./3

On appeal, the government argues that the indictment does in fact allege false and misleading statements./4 However, as the government acknowledged in 1997, the indictment does not allege that defendants misrepresented or concealed a material fact in aid of their scheme. All the government can point to is the language in the indictment and argue that the court should view it as a whole, rather than in a hypertechnical manner./5 The government acknowledges that the indictment does not use the words "material," "misrepresentation," or "concealment" but suggests that the indictment sufficiently apprized defendants of the nature of the charges and all essential elements, including materiality. The indictment merely alleges a "scheme to defraud," however, which the Neder court ruled insufficient. See id. at 20.

The government next argues that even if material falsehoods were not in the indictment, it introduced sufficient evidence of material falsehoods at trial to support the verdict. We review sufficiency of the evidence under a substantial evidence standard. See United States v. Durrive, 902 F.2d 1221, 1229 (7th Cir. 1990). We "view the evidence in the light most favorable to the government and accept circumstantial evidence as support, even sole support, for a conviction." Id. If we find insufficient evidence to support the verdict, we must reverse with instructions that the district court grant a judgment of acquittal. See United States v. Locklear, 97 F.3d 196, 199-200 (7th Cir. 1996). The government claims that it introduced evidence that end-users misrepresented and concealed the use of the illegal descrambler units from cable operators. This evidence does not prove, however, that defendants misrepresented or concealed material facts. Furthermore, the government did not proffer any evidence that Norris or Gee ever induced any of their customers to make false or misleading statements to their customers' cable companies.

The government also points to trial testimony that demonstrated that the chips and descramblers sold by Norris and Gee were designed to allow free access to premium cable channels and to block the subscriber's descrambler unit from receiving electronic authorization instructions from the cable operator. The devices'

capabilities do not, however, prove material falsehoods by Norris and Gee. The government did not proffer any evidence that defendants made any false or misleading statements. Therefore, even after viewing the evidence in the light most favorable to the government, no rational jury could have found the essential element of a material falsehood.

We find that the government not only failed to allege but also failed to prove that Norris or Gee made any false or misleading statements. Consequently, we reverse their mail and wire fraud convictions and remand with instructions that the district court grant a judgment of acquittal on these charges. Accordingly, we find it unnecessary to review whether the district court's jury instructions on material falsehoods were sufficient.

B.  Conspiracy

Defendants next argue that their conspiracy convictions should be reversed on two grounds. First, they contend that the government failed to proffer substantial evidence of an agreement between Norris and Gee to violate 28 U.S.C. sec. 553(a)(1)./6 Second, they argue that the district court's failure to include a buyer-seller instruction is reversible error.

1.  Substantial Evidence

As noted above, we review sufficiency of the evidence under a substantial evidence standard. See Durrive, 902 F.2d at 1228. We also note that

a sufficiency of the evidence challenge is hard to win, given the standard of appellate review. We consider the evidence in the light most favorable to the government, and we must affirm the conviction so long as any rational factfinder could have found the essential elements of the offense to have been established beyond a reasonable doubt. We will overturn the verdict "only if the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt."

United States v. Menting, 166 F.3d 923, 928 (7th Cir. 1999) (internal citations omitted) (quoting United States v. Granados, 142 F.3d 1016, 1019 (7th Cir. 1998)).

The trial evidence establishes that: 1) Gee programmed chips that descrambled premium cable programming; 2) Norris regularly purchased these chips from Gee; 3) Norris installed the chips into descrambling equipment and sold the

equipment or just the chips to customers and distributors; 4) Gee programmed different kinds of chips, depending on Norris's order; 5) Norris and Gee established a routine for their joint venture; 6) Norris and Gee had regular contact with each other via telephone and facsimile; 7) Gee visited Norris's shop on at least two occasions; 8) Norris and Gee collaborated by sharing instructions, warnings, and disclaimers and by having Norris train Gee's employee; and 9) after Gee found out that authorities raided Norris's shop, Gee shipped all of his cable supplies out of state. Defendants counter, however, that this circumstantial evidence suggests only that they had an arm's-length business relationship, not a conspiracy.

A conspiracy requires the government to prove (1) the existence of an agreement to commit an unlawful act; (2) that defendants knowingly and intentionally became members of the conspiracy; and (3) the commission of an overt act that was committed in furtherance of the conspiracy. See United States v. Lahey, 55 F.3d 1289, 1293 (7th Cir. 1995). "The existence of a mere buyer-seller relationship between [defendants, however,] without more, is not sufficient to establish a defendant's guilt. The government must prove that a defendant knowingly and intentionally joined the charged conspiracy, knowing the conspiracy's aims and intending to achieve them." Menting, 166 F.3d at 927; accord United States v. Mims, 92 F.3d 461, 465 (7th Cir. 1996); see also United States v. Townsend, 924 F.2d 1385, 1394 (7th Cir. 1991) ("The buy-sell transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction.").

A conspiracy is more than a buyer-seller agreement. A conspiracy

is an agreement with a particular kind of object-- an agreement to commit a crime. . . . What is required for conspiracy in such a case is an agreement to commit some other crime beyond the crime constituted by the agreement itself. . . . But insofar as there was an agreement between [defendants] merely on one side to sell and on the other to buy, there was no conspiracy between them no matter what [the buyer] intended to do with the [contraband] after he bought [it]. . . . A person who sells a gun knowing that the buyer intends to murder someone may or may not be an aider or abettor of the murder, but he is not a conspirator, because he and his buyer do not have an agreement to murder anyone.

United States v. Lechuga, 994 F.2d 346, 349 (7th Cir. 1993) (en banc); see also Direct Sales Co.

v. United States, 319 U.S. 703, 709 (1943) (ruling "that one does not become a party to a conspiracy by aiding and abetting it . . . and the inference of [conspiracy] cannot be drawn merely from knowledge that the buyer will use the goods illegally").

To find sufficient evidence of a conspiracy, we have "looked for evidence of 'a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture'. . . . Other important indicia of conspiracy include 'the length of affiliation, the established method of payment, . . . the extent to which the transactions are standardized, and the demonstrated level of mutual trust.'" Menting, 166 F.3d at 928 (quoting United States v. Pearson, 113 F.3d 758, 761 (7th Cir. 1997)). If enough of these factors show more than a mere buyer-seller agreement, this court will not reverse a jury's conclusion that a conspiracy existed. See United States v. Clay, 37 F.3d 338, 342 (7th Cir. 1994); accord Pearson, 113 F.3d at 761.

Here, the government proffered sufficient evidence to conclude that Gee knew what Norris was doing with the chips. Moreover, over a period of 13 months, Gee and Norris had regular dealings with each other and developed a routine for their orders and payments. Defendants argue, however, that their transactions could just as easily be construed as routine commercial transactions between business associates and not as "standardized" transactions between conspirators. The supplies Gee sold to Norris and the equipment Norris sold to his customers were not contraband per se./7 Furthermore, Gee and Norris did not have a financial interest in each other's business or share in any of their business profits or losses.

We will not reverse the verdict if we find that the jury, when looking at the evidence in the light most favorable to the government, could have rationally determined that a conspiracy existed. See Durrive, 902 F.2d at 1229-30. While defendants' arguments have merit, a rational factfinder could find that the government established the essential elements of conspiracy beyond a reasonable doubt. Evidence of a 13-month cooperative relationship between Norris and Gee, which included standardized transactions, the sharing of disclaimers, and Norris's training of Gee's employee, supported the conspiracy allegations. Consequently, we find sufficient evidence to support the jury's conspiracy verdict.

2. Buyer-Seller Jury Instruction

Defendants also argue that the district court should have included a buyer-seller jury instruction. They make this argument though they did not suggest this instruction below and never argued this theory of the case to the jury. We review jury instructions not objected to at trial under a plain error standard. See United States v. Reynolds, 189 F.3d 521, 524 n.2 (7th Cir. 1999). Plain error is: (1) an error; (2) that is plain, meaning obvious or clear; and (3) that affects substantial rights. See United States v. Olano, 507 U.S. 725, 732-34 (1993). Furthermore, "[i]n order to reverse a conviction for plain error, [we] must determine . . . that the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Mims, 96 F.3d at 465 (quoting Olano, 507 U.S. at 732).

District judges should inform juries that repeated transactions do not constitute a conspiracy. See United States v. Thomas, 150 F.3d 743, 745 (7th Cir. 1998). "If a jury rationally could find in the defendant's favor on some material issue, then the jury must be instructed on that subject." Id. at 746 (citing Mathews v. United States, 485 U.S. 58, 63 (1988)). Furthermore, because the line between a conspiracy and a mere buyer-seller relationship is difficult to discern, district judges should instruct juries in appropriate situations on the distinction. See Mims, 92 F.3d at 464.

This case presents one of those situations. The proffered evidence of a conspiracy was circumstantial and not overwhelming. The evidence was as consistent with a buyer-seller relationship as it was with a conspiracy. The instructions allowed the jury to make a guilty finding without determining whether the government had proved the existence of a conspiracy. Cf. id. at 466.

We have no way of knowing whether, had the jury understood the distinction between a conspiracy and a buyer-seller relationship, it would still have convicted Norris and Gee of conspiracy. Because a rational jury could find that Gee dealt with Norris without any agreement between them to commit any future crimes, the district court should have included a buyer-seller jury instruction. Moreover, the district court should have sua sponte included a buyer-seller instruction because it knew that the conspiracy evidence was weak./8

The district judge's reservation about the proof of a conspiracy should have alerted him to be certain that the jury correctly evaluated the

evidence before determining whether a conspiracy existed. See Thomas, 150 F.3d at 745-46. This plain error substantially affected defendants' rights. The jury could have concluded that defendants had a buyer-seller relationship and thus acquitted them on the conspiracy charge. Therefore, the failure to give a buyer-seller instruction

affected the substantial rights of the defendants because we cannot be sure whether the jury made the factual findings of conspiratorial agreement necessary for a verdict of guilt. Though we cannot know the probability that the error changed the outcome--a properly instructed jury might, nonetheless, have determined that there was a conspiratorial agreement--we are certain that the error had a substantial potential to affect the outcome. Thus the error affected the defendants' substantial rights.

Mims, 92 F.3d at 466.

Having satisfied the prerequisites for reversal on grounds of plain error in this case, we must determine whether the error is one that "seriously affects the fairness, integrity and public reputation of judicial proceedings." Olano, 507 U.S. at 732. As we found in Mims, this is a difficult question when the evidence was sufficient to support a conspiracy conviction. See Mims, 92 F.3d at 466. However, where, as here, "the existence of a conspiratorial agreement was closely contested and conflicting evidence was presented on the issue, the failure to ensure a jury finding on this essential element undermines the essential fairness and integrity of the trial." Id. Consequently, we must reverse the conspiracy convictions.

C.  Norris's Proposed Jury Instructions

Norris proposed several instructions to advise the jury that the cable equipment at issue in this case was not contraband or illegal per se and that this circuit had ruled in 1988 that a person could not be convicted under 47 U.S.C. sec. 553 for selling a descrambler with the intent that the buyer use it for lawful purposes./9 We review the district court's refusal to give a party's instruction by determining whether the omission prejudiced the party. See United States v. Katalinich, 113 F.3d 1475, 1482 (7th Cir. 1997)./10

A defendant is only entitled to an instruction on his theory of defense if: (1) the defendant proposed a correct statement of the law; (2) the evidence lends some support to the defendant's theory; (3) the defendant's theory of defense is not part of the charge; and (4) the failure to

include the defendant's instruction would deny him a fair trial.

Id. The district court rejected defendants' proposed instructions, finding that Instruction 18 properly covered the topics addressed in Norris's proposed instructions. Instruction 18 states:

The government does not have to prove that the equipment involved in a particular count was sold for the sole and specific purpose of cable television theft, or that the equipment was actually used illegally. The government must prove that Mr. Norris intended the equipment involved in a particular count to be used for unauthorized reception of cable service, or that he acted with specific knowledge that the equipment involved would be so used./11

While Norris's Proposed Instruction No. 5 would have provided more direct guidance than Instruction 18, the district court's refusal to use his instruction did not prejudice Norris. His proposed instruction accurately states that cable descramblers are not per se illegal and that a person is criminally liable only if he sells the devices with the intent or specific knowledge that the buyer will use them for unauthorized purposes. Like Norris's proposed instructions, Instruction 18 states the wilfulness requirement to convict under sec. 553. Consequently, the district court's refusal to use his proposed instructions did not prejudice Norris.

Accordingly, we find that the district court did not err when it rejected Norris's Proposed Instructions Nos. 5 through 8. While we would have preferred Norris's Proposed Instruction No. 5, we do not find that he was prejudiced by the use of Instruction 18.

D. Norris's Relevant Conduct Under U.S.S.G. sec. 1B1.3

Defendants contend that the district court erred in its loss calculations by holding against defendants conduct not necessarily found criminal by the jury and not found criminal by the court at all. First, they maintain that because the district judge determined for purposes of his evidentiary ruling that the government had not proven its conspiracy case,/12 the court should not have considered as relevant conduct any losses other than those related to the descrambler sales specifically charged in the indictment. In other words, the court should ignore any losses only attributable to the conspiracy conviction. Second, defendants maintain that losses from sales not addressed by

a specific count in the indictment cannot be included as relevant conduct because the jury did not specifically find such sales illegal. While we have already ruled that defendants' conspiracy convictions must be reversed, we will offer some comments on this relevant conduct question because it will be relevant at Norris's resentencing.

The Supreme Court allows the sentencing court to include acts or omissions in its sentencing calculations even if the jury acquitted the defendant on those acts or omissions. See United States v. Watts, 519 U.S. 148, 157 (1997). This apparent contradiction exists because sentence calculations require a lower standard of proof than criminal convictions. "The Guidelines state that it is 'appropriate' that facts relevant to sentencing be proved by a preponderance of the evidence, and we have held that application of the preponderance standard at sentencing generally satisfies due process." Id. at 156; see also U.S.S.G. sec. 6A1.3 cmt. Given the district judge's determination prior to the jury verdict that there was not a preponderance of evidence to support the conspiracy counts, a novel question arises. May the district judge ignore acts that the jury found attributable to a defendant beyond a reasonable doubt if the judge believes that they do not pass the preponderance standard?

In Edwards v. United States, the Supreme Court ruled that "regardless of the jury's actual, or assumed, beliefs about the conspiracy, the Guidelines nonetheless require the judge to determine [relevant conduct]." 523 U.S. 511, 514 (1998) (emphasis added). Moreover, we have consistently held that the sentencing judge alone is left to determine all issues of relevant conduct. See United States v. Joiner, 183 F.3d 635, 643 (7th Cir. 1999); see also United States v. Bell, 154 F.3d 1205 (10th Cir. 1998); United States v. Brown, 148 F.3d 1003 (8th Cir. 1998), cert. denied, 525 U.S. 1169 (1999). The district judge may not, however, ignore specific conduct for which the jury found a defendant guilty. See Edwards, 523 U.S. at 514 (ruling that "relevant conduct" includes conduct for which the defendant is convicted).

The district court addressed defendants' arguments in its April 6, 1999, opinion denying defendants' motion for a new trial and denying their motion to reconsider the loss calculations. After summarizing defendants' arguments, the court concluded:

The court's ruling under Fed. R. Evid. 801(d)(2)(E) was not the final word on whether the charged conspiracy was proven. In count 32,

the jury found Mr. Norris and Mr. Gee guilty of the conspiracy that had not been proven to the court's satisfaction in the government's case in chief. While the jury was not required to find each charged overt act to have been proven, the jury had to find that Mr. Norris and Mr. Gee agreed to assist criminal conduct. It is one thing to say as the Watts Court said, that a jury's finding that a count was not proven beyond a reasonable doubt does not preclude a sentencing judge from finding that the activity charged in the count was proven by a preponderance of the evidence. It is quite another to say (as the court believes it must to accept the defendant's argument) that a sentencing judge may disregard a jury's finding of guilt on a count when constructing a "sentencing package," see Woodhouse v. United States, 109 F.3d 347 (7th Cir. 1997), that includes that count.

The jury found the defendants guilty of conspiracy to assist, knowingly and willfully, in the authorized and illegal interception and reception of communications services offered over a cable system and for the purpose of commercial advantage and private financial gain. The court cannot sentence either defendant for that crime without assuming the verdict's truth, and the court cannot determine the guideline range without accepting the truth of the verdict, whatever the sentencing judge might have found under Fed. R. Evid. 104(a) at the conclusion of the government's case in chief. When it is accepted--as [it] must be accepted to impose any sentence on the conspiracy count-- that Mr. Norris and Mr. Gee agreed with each other and with others to assist the unlawful interception of cable signals, the rest of the evidence persuades the court that it is more likely than not than [sic] all of the sales reflected in the Norris Electronics invoices were part of that conspiracy. They must all be considered in determining the sentencing range.

(emphasis added.)

If the district judge concluded that it was more likely than not that the jury included the relevant conduct in its conspiracy conviction, then the judge misread Edwards and Watts. The jury could have convicted defendants of conspiracy with the commission of only one overt act. The district judge made the correct sentencing determination under Edwards and Watts, however, if he independently determined that the government proved by a preponderance of the evidence that all of the relevant conduct included in his sentencing calculations were part of the conspiracy.

Accordingly, at Norris's resentencing, the district judge should make an independent evaluation of the relevant conduct to include in his sentence calculations. Norris's relevant conduct includes the specific convictions that still stand--the eleven counts of assisting unauthorized reception of cable service. The district judge can also include conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction," U.S.S.G. sec. 1B1.3(a)(2); accord Edwards, 523 U.S. at 514, if the district judge finds that the government proved this other conduct by a preponderance of the evidence.

E.   Loss Calculation Under U.S.S.G. sec. 2F1.1(b)(1)

The government appeals the district court's loss calculations. This loss calculation issue will resurface when the district court resentences Norris. At defendants' sentencing, the government argued that the district court should calculate loss using the formula devised by the National Cable Television Association ("NCTA"), which computes loss based on the value of the cable television programming to which the descramblers afforded unauthorized access. Under this approach, the losses attributed to Norris are $15,176,364 and to Gee are $13,233,864. Defendants urged the court to employ a method used by the government in a similar case from New Jersey, which computed loss by summing the sale prices of the equipment sold. Under this method, the losses attributed to Norris are $1,240,875 and to Gee are $1,041,510.

The district court adopted the defendants' approach. We review the district court's loss determinations under U.S.S.G. sec. 2F1.1(b)(1) for clear error. See United States v. Saunders, 129 F.3d 925, 929 (7th Cir. 1997). Guideline interpretations are questions of law, however, which we review de novo. Id.

The Guidelines increase the offense level for offenses involving fraud or deceit based on the amount of "loss." The Guidelines suggest that

the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations. The offender's gain from committing the fraud is an alternative method that ordinarily will underestimate the loss.

U.S.S.G. sec. 2F1.1 cmt. 9. Courts may use the gain from participation in the fraud when the exact amount of the loss to the victim is unknown. See United States v. Craig, 178 F.3d 891, 899 (7th Cir. 1999); see also United States v. Andersen, 45 F.3d 217, 221 (7th Cir. 1995) (ruling that "the defendant's gain may provide a reasonable approximation of a victim's loss when more precise means of measuring loss are unavailable").

The district court found the NCTA calculation unreasonable because this calculation assumes that each purchaser used the descrambler illegally and that each purchaser used the descrambler to view all available premium programming. More important, according to the district court, the NCTA calculation assumes, without any evidence, that had Norris not sold descramblers, his customers would have purchased all of the available premium channels from the cable companies. Accordingly, the district court opted to compute loss based on defendants' gross revenue because a precise method of calculating loss was unavailable. Nothing in the government's arguments on appeal convinces us that the district court's determination was clearly erroneous. The government makes the same arguments on appeal that it did before the district court. The district court evaluated the government's arguments but found that the defendants' approach was the better method of calculating loss. The government would be well served in cases like this to include a survey or statistical sampling to support its estimate of the loss.

Accordingly, at Norris's resentencing, the district judge can calculate the meaning of "loss" under U.S.S.G. sec. 2F1.1 (b)(1) by using the gross revenue that Norris derived from his relevant conduct. Based on our above relevant conduct analysis, the district judge may attribute a different loss amount to Norris at his resentencing.

F.  Departure Under U.S.S.G. sec. 5K2.0

Although Norris was not eligible for a reduction in his offense level for acceptance of responsibility under U.S.S.G. sec. 3E1.1,/13 the district court granted him a two-level downward departure for acceptance of responsibility under sec. 5K2.0./14 The district court found that Norris demonstrated a "non-heartland" acceptance of responsibility. He made early and consistent offers to the government to determine the legality of his business through a prompt civil declaratory

judgment action. Moreover, he immediately discontinued his business following the verdict against him. The government argues that the district court had no authority to grant Norris a departure for "quasi-acceptance of responsibility" after denying him a reduction under sec. 3E1.1.

We review a district court's departure decision for abuse of discretion and its findings of fact for clear error. See United States v. Wilke, 156 F.3d 749, 753 (7th Cir. 1998). We review de novo a district court's grounds for departure. See United States v. Bradley, 196 F.3d 762, 771 (7th Cir. 1999). A sentencing judge has broad discretion to depart downward when not blocked by a specific guideline. See United States v. Stefonek, 179 F.3d 1030, 1038 (7th Cir. 1999) (citing Koon v. United States, 518 U.S. 81, 98-100 (1996)), cert. denied, 120 S. Ct. 1177 (2000). The Guidelines apply to a "heartland" of typical cases. See Koon, 518 U.S. at 94. If the case is within the "heartland," a district judge must impose a sentence falling within the applicable Guideline range. See id. at 92. However, the Guidelines "authorize[ ] district courts to depart in cases that feature aggravating or mitigating circumstances of a kind not adequately taken into consideration by the [Sentencing] Commission." Id. Here, the Guidelines do not explicitly bar the district court's departure. Moreover, the district judge found many reasons why this case, and Norris's actions, fell outside the "heartland" of the applicable guidelines.

Norris consistently believed that he was operating a legal business because his product was ambiguous in the sense that customers could use it for legal--as well as illegal--purposes. He offered for more than five years to play a lower-stakes game with the government--one in which his ante would be his business, but not his freedom. He invited a civil suit, seeking an injunction, which would have prevented the sales of any items found illegal. Early on, Norris prevailed: counts brought under one statute were dismissed, and the dismissal was affirmed, see United States v. Norris, 34 F.3d 530 (7th Cir. 1994); detention was denied because it did not appear to the court that Norris's conduct had been shown to violate the statute; counts brought under another statute were also dismissed, and that dismissal was also affirmed, see United States v. Norris, 88 F.3d 462 (7th Cir. 1996). Even as Norris won these early battles, he continued to suggest to the government that it pursue the civil alternative.

After his conviction, Norris immediately ceased

his business, froze his inventory, offered negotiations with the government concerning the disposal of his inventory, and offered his full assistance to the government with respect to access to his inventory.

In the ordinary ("heartland") case, such post-trial conduct would be unremarkable, but in the unusual circumstances of this case, it demonstrates a different form of acceptance of responsibility that seems to echo the concerns that led the drafters of the guidelines to allow a finding of sec. 3E1.1(a) when a defendant goes to trial to determine a statute's applicability to his conduct. This case's circumstances are far too unusual to have been contemplated by the Sentencing Commission when it drafted sec. 3E1.1.

Norris April 9, 1999 Sentencing Mem. at 13.

The government argues that the district court did not have authority to grant this departure after denying Norris a sec. 3E1.1 departure. The government suggests that a "quasi-acceptance of responsibility" departure under sec. 5K2.0 is available only to defendants who have already received the maximum reduction under sec. 3E1.1. The government's cited cases, however, are unavailing.

In United States v. Bean, 18 F.3d 1367, 1368-69 (7th Cir. 1994), the district court allowed a six-level downward departure for "extraordinary acceptance of responsibility" because the defendant had voluntarily repaid the money that he had defrauded from a bank. We reduced the departure to two levels because the defendant continued to insist on his innocence even after his conviction and because his conviction was his third for defrauding a financial institution. Contrary to the government's assertion, Bean does not stand for the proposition that sec. 5K2.0 departures for acceptance of responsibility are unavailable for defendants who do not qualify for a sec. 3E1.1 departure. Furthermore, Bean is clearly distinguishable from this case. Norris did not insist on his innocence after the jury convicted him, and he has not displayed a pattern of fraudulent activity.

In United States v. Bailey, 97 F.3d 982, 986 (7th Cir. 1996), we affirmed the trial court's denial of a sec. 3E1.1 departure. The trial court determined that the defendant did not display genuine remorse or contrition. Bailey does not help the government. Bailey merely reinforces the requirements for a sec. 3E1.1 departure; it does not address the prerequisites for a sec. 5K2.0 departure.

Likewise, we easily distinguish the facts in Stefonek from the instant case. In Stefonek, we reversed the district court's "community service" ground for departure because the services were provided by the same businesses that were the vehicles of Stefonek's multiple violations of federal law. 179 F.3d at 1038. No such "Robin Hood theory of sentencing" exists here. Cf. id.

The district court correctly applied the applicable grounds for departure. Therefore, we conclude that it was not clear error for the district court to depart downward two-levels under sec. 5K2.0.

G. Norris's Downward Departure for his Physical Condition and Imposition of Home Detention

After reviewing more than 500 pages of medical records, watching a videotaped deposition of Norris's cardiologist, observing Norris at trial and during sentencing, and listening to the in-court testimony of both Norris and his mental health therapist, the district court concluded that imprisonment posed a substantial risk to Norris's life and, therefore, departure under U.S.S.G. sec. 5H1.4 was warranted./15 The government contends that Norris's physical condition was not an "extraordinary physical impairment" within the meaning of sec. 5H1.4 and that the Bureau of Prisons ("BOP") could provide adequate medical care to Norris. We review a district court's departure decision for abuse of discretion and its findings of fact for clear error. See Wilke, 156 F.3d at 753. We review de novo a district court's grounds for departure. See Bradley, 196 F.3d at 771.

We have developed a three-part test to facilitate our analysis:

First, we must determine whether the district court has stated adequate grounds for departure. This is a question of law and is reviewed de novo. Second, we must determine whether the facts which underlie the grounds for the departure actually exist. This determination is reviewed using the clearly erroneous standard of review. Third, we must determine whether the degree of departure is linked to the structure of the Guidelines. The district court's findings on what degree of departure is appropriate are given deference.

United States v. Hendrickson, 22 F.3d 170, 175 (7th Cir. 1994). Unlike the cases cited by the government, the district court in this case made particularized findings that Norris was entitled to a departure under sec. 5H1.4. In United States v. Sherman, 53 F.3d 782, 787 (7th Cir. 1995), we

rejected the district court's downward departure under sec. 5H1.4 because the "judge made no legal finding with regard to the treatment [the defendant] was likely to receive in jail in relation to his medical needs, nor did he rely on a competent medical diagnosis of [the defendant's] condition." In United States v. Woody, 55 F.3d 1257, 1275-76 (7th Cir. 1995), we affirmed the district court's decision not to depart under sec. 5H1.4 because the defendant presented "no sound factual foundation" to support the departure. In this case, moreover, the district court found that the BOP's letter/16 was merely a form letter trumpeting the BOP's ability to handle medical conditions of all kinds. Consequently, it was not an abuse of discretion for the district court to conclude that Norris's medical condition warranted a downward departure.

The government also argues that the district court's imposition of a nonprison sentence-- probation and home monitoring--is not available because Norris's offense level of 21 falls in Zone D of the sentencing table. Imprisonment substitutes are not available for offense levels that fall in Zone D. See U.S.S.G. sec.sec. 5B1.1 cmt. 2, 5C1.1(f) & cmt. 8, 5F1.2./17

The district court tried to keep Norris's sentence consistent with the Guidelines while also keeping him out of prison. Consequently, instead of departing through the offense levels, the judge departed from the restrictions of sec. 5B1.1 and sec. 5C1.1. The district court recognized that the Guidelines do not provide for 37 months of home detention, but ruled the Guideline's restriction

no impediment, because this case involves factors not adequately considered by the Sentencing Commission. Finally, the court believes the sentence properly considers the structure of the guidelines, because, among other reasons noted thus far, the guidelines include the recognition in U.S.S.G. sec. 5H1.4 that "in the case of a seriously infirm defendant, home detention may be as efficient as . . . imprisonment."

Norris April 9, 1999 Sentencing Mem. at 13.

The district court improperly departed outside the Guidelines. Although sec. 5H1.4 allows the use of home detention, the defendant's offense level must be in Zone A or B to satisfy the requirements of sec. 5B1.1(a) (probation not allowed for Zone C or D offense levels), sec. 5C1.1(f) ("if the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of

imprisonment"), and sec. 5F1.1 ("community confinement may be imposed as a condition of probation or supervised release"). Consequently, upon resentencing, unless Norris's offense level is in Zone A or B, the district court may not sentence him to home detention.

III

For the reasons stated above, we REVERSE Jim Gee's and William C. Norris's convictions on mail fraud, wire fraud, and conspiracy. We AFFIRM Norris's conviction for assisting unauthorized reception of cable service, but we VACATE his sentence and REMAND for resentencing consistent with this opinion.

/1 Norris was originally charged over six years ago with unauthorized decryption of satellite cable programming under 47 U.S.C. sec. 605(e)(4). The district court granted Norris's motion to dismiss on the ground that his alleged conduct concerned coaxial cable rather than satellite signals. We affirmed. See United States v. Norris, 34 F.3d 530 (7th Cir. 1994). The government next indicted Norris with violating the second part of 47 U.S.C. sec. 605(e)(4), which by reference to 47 U.S.C. sec. 605(a) prohibits the unauthorized interception of radio communications. The district court also dismissed these counts, ruling that the cable television programming that Norris allegedly helped intercept did not constitute radio communications, and we affirmed. See United States v. Norris, 88 F.3d 462 (7th Cir. 1996). After these two interlocutory appeals by the government and two superseding indictments, Norris and Gee came to be charged under the present indictment on January 9, 1997.

/2 "It is clear from a reading of the indictment that the fraud charges are not based on misleading statements or fraudulent omissions." Gov't's Resp. in Opp'n to Mot. to Dismiss Second Superseding Indictment at 2.

/3 Norris first moved the district court to dismiss the wire and mail fraud charges in 1993, well before Gee was ever involved in this case. The district court denied the motion, stating that "[c]ontrary to Mr. Norris's assertions, a charge of wire or mail fraud need not be supported by an underlying false representation or statement." United States v. Norris, 833 F. Supp. 1392, 1396 (N.D. Ind. 1993), aff'd, 34 F.3d 530 (7th Cir. 1994). Thereafter, in response to a superseding indictment in 1997, in which Gee was also named as a defendant, defendants moved for a dismissal of the wire and mail fraud charges.

/4 The government concedes that the Neder holding will be retroactively applied to this case.

/5 Count 1 charges that

> William Norris . . . knowingly devised a scheme and artifice to defraud cable television companies . . . of premium and special programming transmissions and subscription fee revenues. The scheme and artifice to defraud include the assembly, modification, sale and distribution of modified cable television converter-decoders and other decoding devices which enabled basic cable television subscribers to receive premium and special cable programming without the knowledge and authorization of the cable television companies and without payment of the required subscription fee.

Superseding Indictment, Count 1 para. 14.

Count 2 charges that Norris bought chips from Gee who

> programmed the chips and modules so that the cable converter-decoder in which they were installed would receive all premium cable television programming, including Pay-Per-View, without detection and without payment of the required fee or subscription fee to the cable television company.

Id. Count 2 para. 2.

/6 Count 32 of the Superseding Indictment alleges that defendants

> did combine, conspire, confederate and agree among themselves and with other persons both known and unknown to the Grand Jury, to . . . violat[e] 47 U.S.C. sec. 553(a)(1), by knowingly and willfully, for the purpose of commercial advantage and private financial gain, assist[ ] in intercepting and receiving certain communications services offered over a cable system, which was not specifically authorized by a cable operation and otherwise not specifically authorized by law, in that they manufactured and distributed and caused to be manufactured and distributed equipment intended for unauthorized reception of premium and Pay-Per-View cable television programming.

Superseding Indictment, Count 32 para. 2.
/7 In this regard, Norris's and Gee's case is unlike the quintessential illegal drug case that forms the basis for conspiracy case law in this circuit. See, e.g., Menting, 166 F.3d at 925 (cocaine); United States v. Thomas, 150 F.3d 743, 743 (7th Cir. 1998) (crack cocaine); Pearson, 113

F.3d at 759 (cocaine); Mims, 92 F.3d at 462 (same); Lechuga, 994 F.2d at 346 (same); Townsend, 924 F.2d at 1388 (heroin, cocaine, and marijuana).

/8  During the trial, the district court ruled that the government could not admit coconspirator statements under Fed. R. Evid. 801 (d)(2)(E). The district court found that the government had not shown, by a preponderance of the evidence, that a conspiracy existed between the defendants. See generally Bourjaily v. United States, 483 U.S. 171, 175-76 (1987) (ruling that "when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence"). The district court observed that:

This is not a matter of the sufficiency of the evidence to allow Count 32 of the Indictment to survive the motion for judgment of acquittal at the close of the government's case. This is not a matter of the sufficiency of the evidence for the trier of fact to find the predicate facts to be true. It's a question for me to decide. So I can't just sit here and decide whether the jury could find these things to have been proven. I must find that these things have been proven by a preponderance of the evidence. And in making that determination, I weigh the evidence as though we were at the end of a bench trial.

. . .

. . . .

Sitting as a fact finder, . . . I find myself unpersuaded that there was an agreement to assist others in the unauthorized reception of cable signals.

The district court did find, however, that there was sufficient evidence to let the jury decide whether the government had proven a conspiracy.

/9 Norris tendered the following as his proposed Instructions Nos. 5 through 8.

A person does not violate 47 U.S.C. sec. 553 for being engaged in the production or sale of a device or equipment which is used for legal purposes merely because the same device or equipment is capable of being used for unauthorized reception of cable service. The particular device or equipment that is the subject of any count brought in the Indictment under 47 U.S.C. sec. 553 must have been provided with the intent or specific knowledge that it will be used for unauthorized reception of cable service before any provider could be convicted.

Norris's Proposed Instruction No. 5.

This proposed instruction was adopted from the Cable Communications Policy Act's legislative history. See H.R. Rep. No. 98-934, at 84 (1984), reprinted in 1984 U.S.C.C.A.N. 4721 ("The Committee does not intend that manufacturers, distributors or retailers be subject to liability under this section if they are engaged in the production or sale of a device or equipment which is used for legal purposes merely because the same device or equipment is capable of being used for unauthorized reception of cable service, if they do not provide the equipment with the intent or specific knowledge that it will be used for the unauthorized reception of cable service.").

There is no federal law making it a crime merely to manufacture, distribute, or own a descrambler. It is a federal crime to manufacture, distribute, or own a descrambler only if there is an intent to receive or assist in receiving unpurchased programming.

Norris's Proposed Instruction No. 6.

It is not a violation of sec. 553 to use a customer-owned descrambler to view programming that a customer has purchased.

Norris's Proposed Instruction No. 7.

In 1988 the United States Court of Appeals for the Seventh Circuit (the federal appellate court having jurisdiction over federal cases brought in Indiana, Illinois, and Wisconsin) handed down a case entitled United States v. Gardner, 860 F.2d 1391 (7th Cir. 1988). The United States Court of Appeals stated in that Gardner case that a person could not be convicted of an offense under 47 U.S.C. sec. 553 if he sold so-called black boxes (meaning nonaddressable descramblers) with the intent that they be used for lawful purposes.

Norris's Proposed Instruction No. 8.

/10 The government argues that this court should review Norris's rejected jury instructions for plain error because Norris did not properly object to the court's Instruction No. 18. "Merely submitting an instruction is not enough. A defendant must object to the judge's refusal on the record and clearly state the reasons for his objections. Otherwise, we will review a district court's refusal of a proposed jury instruction for plain error." Katalinich, 113 F.3d at 1482; accord Fed. R. Crim. P. 30. The government suggests that because Norris did not properly object to Instruction 18, he waived his right to

object to the court's refusal to use his proposed Instructions 5 through 8. The government's argument is absurd. Just because Norris's proposed instructions are related to Instruction 18 does not require Norris to object to Instruction 18 in order to preserve his objections to the court's declination of his proposed instructions. Norris clearly alerted the district court to the potential problems with the court's instructions and the reasons for his objections. See United States v. O'Neill, 116 F.3d 245, 247 (7th Cir. 1997); see also Tr. V-21, V-34-35. Accordingly, we will not review Norris's rejected instructions for plain error.

/11 Instruction 18 was adopted from our Gardner opinion. See 860 F.2d at 1399 ("To convict under sec. 553, the jury was not required to find that the black boxes were sold for the sole and specific purpose of cable piracy, nor that the boxes were actually used illegally. Rather, the jury only needed to find that [defendant] intended the black boxes to be used for the unauthorized reception of cable service when he sold the boxes to [his customer].").

/12 See supra note 8.

/13 U.S.S.G. sec. 3E1.1 allows a two-level offense level reduction if "the defendant clearly demonstrates acceptance of responsibility for his offense." This reduction does not generally apply, however, in situations, like here, where the defendant "puts the government to its burden of proof at trial by denying the essential factual elements of guilt." U.S.S.G. sec. 3E1.1 cmt. 2.

/14 U.S.S.G. sec. 5K2.0 states:

an offender characteristic or other circumstance that is, in the Commission's view, "not ordinarily relevant" in determining whether a sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the "heartland" of cases covered by the guidelines.

/15 U.S.S.G. sec. 5H1.4 states:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as

efficient as, and less costly than, imprisonment.

/16 This was the only evidence presented by the government at Norris's sentencing in arguing against departure.

/17 U.S.S.G. sec. 5B1.1 cmt. 2 states: "Where the applicable guideline range is in Zone C or D of the Sentencing Table . . ., the guidelines do not authorize a sentence of probation."

U.S.S.G. sec. 5C1.1(f) states that "[i]f the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment." Comment 8 to sec. 5C1.1(f) precludes the use of any imprisonment substitutes where the applicable guideline range is in Zone D.

U.S.S.G. sec. 5F1.2 states that "Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment."