[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2005
THOMAS K. KAHN
CLERK

No. 04-10439
Non-Argument Calendar

_____

D. C. Docket No. 03-00016-CR-4-SPM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HERNANDEZ LOPAZ DANIELS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 14, 2005)

Before ANDERSON, CARNES and HULL, Circuit Judges.

PER CURIAM:

Hernandez Lopaz Daniels was convicted by a jury of one count of

conspiring to possess and distribute more than 50 grams of cocaine base, in

violation of 21 U.S.C. § 846, and of two counts of distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). He was sentenced to concurrent terms of life in prison and 360 months in prison, respectively, to be followed by ten years of supervised release. Daniels appeals both his conviction and his sentence. We affirm his conviction, but vacate and remand his sentence in light of United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005).

## I. Factual Background

Constance Dupont was arrested in Havana, Florida (a small town in Florida's panhandle near Tallahassee) for possessing crack cocaine. In order to avoid a long prison sentence, Dupont agreed to act as a confidential informant for the police with regard to local drug activity.

As part of her work as a CI, Dupont arranged to meet Daniels at the Tallahassee Mall to buy crack cocaine. With law enforcement officers watching, Daniels pulled up to the car of an unidentified couple waiting at the mall. The couple gave Daniels their car and he took it to another area of the mall to pick up Dupont. Daniels drove Dupont back to his car and the two then went elsewhere to complete the transaction. Dupont bought 3.5 grams of crack cocaine for $250.00. She recorded the transaction on a hidden tape recorder.

After Daniels dropped Dupont back at her car, where the undercover officer was waiting for her, Daniels called Dupont on her cell phone, which was actually the borrowed cell phone of the undercover officer. The officer answered by mistake.

A week later, Dupont tried to arranged another drug deal with Daniels. She called Daniels on the undercover officer's cell phone, but Daniels did not answer. Daniels and his girlfriend, Iraima Green (who was Dupont's cousin and who had introduced Dupont and Daniels), then called Dupont nineteen times on the officer's cell phone using an option on his phone that disguised his number to the call recipient. According to Green, Daniels did this to get the phone's real owner to answer and confirm his suspicion that Dupont was an informant for the police. The next day, Dupont was found shot dead.

A few months later, the police asked another CI, Nan Campbell, who along with her husband had previously purchased drugs from Daniels, to buy more crack cocaine from him. Campbell and her husband met Daniels and Green at an abandoned convenience store in Chattahoochee, Florida, where they bought 0.9 grams of crack cocaine for $200.00. Campbell, like Dupont, recorded the conversation.

3

Daniels was arrested a few months later on March 11, 2003. After searching his home, law enforcement officers found ledgers recording Daniels's drug transactions from November 1997 to July 1999, including those with Campbell and her husband. Vincent Burgess, a friend of Daniels, told the police that he had been Daniels's cocaine supplier during that period.

While Daniels was awaiting trial, he was housed at the Federal Detention Center in Tallahassee and shared a cell with Gary Joseph. Daniels told Joseph during the course of their conversations that he had killed the informant in his case to eliminate any potential prosecution. Daniels said that he had met the informant in his case through the informant's cousin, who was his girlfriend, and that he had discovered the informant was working for law enforcement when he had called her cell phone and a white man answered. Daniels also said that he was a drug dealer and that he sold drugs to a number of long-term customers.

Based on Daniels's conversations with Joseph, his dealings with the confidential informants, and the evidence collected at his home, Daniels was indicted for one count of conspiring to possess and distribute more than fifty grams of crack cocaine and three counts of distributing crack cocaine. After a three-day trial, a jury convicted Daniels of the conspiracy count and two counts of distribution. He was sentenced to life in prison for the conspiracy count and 360

months in prison for the two distribution counts, all followed by ten years of supervised release. Daniels appeals his conviction and sentence on multiple grounds.

## II. Sufficiency of the Indictment

Daniels first contends that the district court erred by denying his motion to dismiss the government's indictment as to the conspiracy count. He argues that the indictment was insufficient because it did not identify with whom he conspired to possess and distribute drugs. We review the denial of a motion to dismiss an indictment for an abuse of discretion. United States v. Pielago, 135 F.3d 703, 707 (11th Cir. 1998).

We have held, when faced with a similar challenge by a defendant who sought to dismiss his indictment on conspiracy charges, that "absent a discovery order, the [government] has no general obligation to disclose the names of unindicted co-conspirators who will not be called as witnesses." United States v. White, 846 F.2d 678, 693 (11th Cir. 1988); cf. United States v. Martinez, 96 F.3d 473, 477 (11th Cir. 1996) (upholding a defendant's conviction where the indictment alleges that the defendant conspired with "unknown persons"). Here, Daniels did not seek to obtain the names of the unindicted co-conspirators and the district court did not order their disclosure. Neither did the government call the

unindicted co-conspirators as witnesses. Accordingly, the government's indictment in this case was sufficient, despite its failure to name the co-conspirators. See White, 846 F.2d at 693.

### III. Admissibility of Evidence Concerning Dupont's Murder

Daniels next contends that the district court erred by admitting evidence about Dupont's murder because the evidence's prejudicial effect substantially outweighed its probative value. Specifically, Daniels argues that the evidence of Dupont's murder was not essential to the government's case and only served to confuse the jury. We review the district court's evidentiary rulings for abuse of discretion. United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992).

Daniels is right that evidence relevant to his guilt may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. However, the district court's discretion to exclude relevant evidence under Rule 403 is "narrowly circumscribed." Id. "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." Id. (quotation omitted).

This is especially true with regard to conspiracy cases. "The application of Rule 403 in conspiracy cases to exclude potentially relevant evidence . . . because it might cause jury confusion will usually be inconsistent with the general rule

6

favoring admission of such evidence and allowing the jury to decide if it relates to the indicted conspiracy." United States v. Costa, 947 F.2d 919, 924 (11th Cir. 1991). For example, in United States v. Meester, 762 F.2d 867 (11th Cir. 1985), the defendants, who were charged with conspiracy to import and distribute drugs, challenged under Rule 403 the admission of evidence that the pilot who had transported their drugs and money had been murdered prior to trial. Id. at 873–74. We held that the prejudicial effect of the evidence of the pilot's murder did not substantially outweigh its probative value to the government to show the defendants' participation in and furtherance of the conspiracy, especially where the district court gave a limiting instruction to the jury explaining the proper use of the evidence in the jury's deliberations. Id. at 875–76.

Here, the evidence of Dupont's murder was used for the same purpose. Dupont's involvement in Daniels's conspiracy to sell crack cocaine was essential to the government's case and the government needed to explain why Dupont was not testifying herself. Moreover, Daniels's statements to Joseph that he had killed Dupont were probative of his furtherance of the conspiracy by eliminating someone who could have brought it to an end. And, like the court in Meester, the district court here instructed the jury that the evidence of Dupont's murder "should only be considered for the drug offenses charged in the indictment. The defendant

7

is not on trial in this case for homicide." (R.3:424–25). Accordingly, we conclude that the district court did not abuse its discretion by admitting this evidence.

## IV. Motion for Judgment of Acquittal

Daniels's third contention is that the district court improperly denied his motion for judgment of acquittal because there was insufficient evidence that he conspired with other persons to sell crack cocaine, a necessary element of the conspiracy charge. We will affirm the district court's decision to deny a motion for judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000). "The evidence is viewed in the light most favorable to the government and all reasonable inferences and credibility choices are made in the government's favor." United States v. Martinez, 83 F.3d 371, 373–74 (11th Cir. 1996) (citations omitted).

With regard to the conspiracy charge, the government must provide evidence such that a reasonable jury could conclude beyond a reasonable doubt that there was an agreement between the defendant and one or more persons, and the object of the agreement was to do either an unlawful act or a lawful act by unlawful means. United States v. Smith, 289 F.3d 696, 706 (11th Cir. 2002). "The

existence of the conspiracy and the defendant's participation in it may be established through circumstantial evidence."  Id.

Here, the evidence that Daniels had entered into and furthered a conspiracy with other persons was overwhelming.  It showed that he:  (1) partnered with his friend Burgess from mid-1998 until April 1999 to sell Burgess's drugs and split the profits; (2) advanced large sums of cocaine to Henry Washington from 1998 to 2000 and tried to cook several ounces of crack cocaine for him; (3) was introduced to Dupont by Green, who also accompanied him on several drug deals; (4) used the car of an unidentified couple to facilitate the crack cocaine deal with Dupont at the Tallahassee Mall; and (5) used Green and his brother to find out if Dupont was working for the police, which led to Dupont's murder.  Viewing all the evidence in the light most favorable to the government, it is clear that Daniels agreed with one or more persons to further his crack cocaine business.  It was not error for the district court to deny his motion for judgment of acquittal.

## V.  Jury Instruction

Daniels also contends that it was error for the district court not to have instructed the jury that without a showing of knowledge, a single, isolated act by a defendant does not constitute participation in a conspiracy.  In other words, Daniels argues that the court should have sua sponte given the jury a buyer-seller

relationship instruction. Because Daniels failed to raise this objection before the district court, we review it now for plain error. United States v. Prieto, 232 F.3d 816, 819 (11th Cir. 2000). "We find plain error only where (1) there is an error; (2) the error is plain; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity or public reputation of a judicial proceeding." Id. (citing United States v. Olano, 507 U.S. 725, 730–32, 113 S.Ct. 1770, 1775–76 (1993)).

Daniels has not met the first prong of plain error review because the district court's actual instruction was not in error. A district court's decision to deny a jury instruction requested by the defendant is not erroneous if the instruction the court actually gave the jury "adequately covered" the defendant's requested instruction. United States v. Brazel, 102 F.3d 1120, 1139 (11th Cir. 1997). That is, if the instruction the district court gave included or paraphrased the defendant's requested instruction, refusing to give the duplicate instruction is not error.

In Brazel, the district court instructed the jury that "mere presence or association did not necessarily prove a conspiracy, and that a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purposes of one, does not thereby become a conspirator." Id. at 1139–40. This

10

instruction, we held, adequately covered the buyer-seller relationship instruction the defendant in that case requested.  Id.

Here, the district court gave a jury instruction materially similar to the one the court gave in Brazel:  "Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy.  Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator." (R.1:40:9).  We find, like the Brazel Court, that this instruction adequately covered Daniels's preferred buyer-seller relationship instruction, the same one the defendant in Brazel requested.  Accordingly, the district court's failure to give such an instruction to the jury was not plainly erroneous.[1]

_____

[1] As a corollary to this contention, Daniels also argues that his counsel was ineffective for failing to request a specific buyer-seller relationship instruction.  However, we do not "generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop the factual record."  United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002).  Even if we did, though, Daniels's contention would not meet the Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), standard for ineffective assistance of counsel.  Daniels's counsel was not deficient, id. at 687, 104 S. Ct. at 2064, because the instructions he consented to, the "mere presence" and "no knowledge" instruction cited above, were substantively identical to the buyer-seller relationship instruction, see Brazel, 102 F.3d at 1139–40.  And, Daniels was not prejudiced by not having the buyer-seller relationship instruction, see Strickland, 466 U.S. at 687, 104 S. Ct. at 2064, because the substance of that instruction was adequately covered by the instruction the district court actually gave and the evidence of Daniels's participation and furtherance of the conspiracy was overwhelming.

11

## VI. Motion for New Trial

Daniels's fifth contention is that the district court erred in denying his motion for a new trial because the indictment, which alleged that Daniels conspired to sell drugs from March 1, 1998 to March 5, 2003, included time outside the five-year statute of limitations, making it defective. Daniels filed his motion for a new trial on April 19, 2004, almost six months after the jury verdict was entered.

We have held that "the statute of limitations is a matter of defense that must be asserted at trial by the defendant." United States v. Najjar, 283 F.3d 1306, 1308 (11th Cir. 2002) (emphasis added) (citing Capone v. Aderhold, 65 F.2d 130, 131 (5th Cir. 1933)[2]). Where the defendant has not asserted his statute of limitations defense at trial, he is deemed to have waived the defense and cannot later bring it up on appeal. See Najjar, 283 F.3d at 1308–09; Capone, 65 F.2d at 131. Because Daniels did not raise his statute of limitations objection at trial, he has waived the issue here.[3]

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3] Daniels also contends that his counsel was ineffective for not raising the statute of limitations objection at trial. As we explained above, we generally do not consider ineffective assistance of counsel claims on direct appeal. Bender, 290 F.3d at 1284. However, even if Daniels had timely objected, he would not have prevailed. "The government satisfies the requirements of the statute of limitations for a non-overt act conspiracy if it alleges and proves that the conspiracy continued into the limitations period." United States v. Arnold, 117 F.3d 1308, 1313 (11th Cir. 1997). That is, as long as part of the conspiracy took place within five years of the indictment, the statute of limitation is satisfied. Here, as we detailed above, the

## VII. Booker Error

Finally, Daniels contends that his sentence violated Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), as applied to the federal sentencing guidelines in United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), because the district court enhanced his sentence based on the fact, found by the district court by a preponderance of the evidence, that he was involved in Dupont's murder. Because Daniels timely objected to the Booker issue at trial, see United States v. Dowling, 403 F.3d 1242, 1245 (11th Cir. 2005) (Booker constitutional error is preserved if defendant objects that an issue should go to the jury), we review the constitutional error to determine "if the error was harmless," United States v. Paz, ___ F.3d ___, 2005 WL 757876, *2 (11th Cir. Apr. 5, 2005).

"To find harmless error, we must determine that the error did not affect the substantial rights of the parties. A constitutional error, such as a Booker error, must be disregarded as not affecting substantial rights, if the error is harmless beyond a reasonable doubt. This standard is only met where it is clear beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained. The burden is on the government to show that the error did not affect the defendant's substantial rights." Id. (citations, quotations, and alterations omitted).

_____

evidence clearly demonstrates that Daniels participated in the conspiracy from 1998 until 2003, when he was arrested.

13

Here, Daniels was convicted by the jury of conspiring to sell more than fifty grams of cocaine, which, when combined with his two prior felony drug convictions, required the district court to sentence him to a mandatory term of life in prison. 21 U.S.C. § 841(b)(1)(A). The extra-verdict enhancements as a result of the district court's finding that Daniels was involved in Dupont's murder by a preponderance of the evidence did not affect Daniels's substantial rights with regard to this mandatory sentence.

The enhancements did, however, affect Daniels's substantial rights with regard to his conviction for two counts of distributing crack cocaine. Using the guidelines to calculate Daniels's sentence, the district court assigned a base offense level of thirty eight because, throughout the course of his conspiracy, Daniels possessed and sold more than 1.5 kilograms of cocaine base. U.S.S.G. § 2D1.1(c)(1). The court then enhanced Daniels's sentence four levels based on its finding by a preponderance of the evidence that he was involved in Dupont's murder: two for using a gun in the death of Dupont, id. § 2D1.1(b)(1), and two for obstructing justice by murdering a confidential informant, id. § 3C1.1.

Given that Daniels's sentence was "increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by a jury" under a mandatory guidelines system, his Sixth Amendment right

14

to a jury trial was violated.  See United States v. Rodriguez, 398 F.3d 1291, 1297 (11th Cir. 2005).  Because the record is unclear what the district court would have done had the sentencing guidelines been advisory rather than mandatory, the government has not demonstrated beyond a reasonable doubt that the district court would have given Daniels the same 360-month sentence for the two distribution counts under an advisory guidelines regime.  We, therefore, vacate his sentence and remand for resentencing in light of the Supreme Court's decision in Booker.

## VIII.  Conclusion

For the foregoing reasons, we AFFIRM Daniels's conviction for one count of conspiring to possess and distribute cocaine and for two counts of distributing cocaine.  We also VACATE Daniels's sentence insofar as it involves the two distribution counts and REMAND for resentencing consistent with this opinion.