NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0145n.06
Filed: March 12, 2008

No. 06-2176

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| CHRISTOPHER MICHAEL O'NON, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: NORRIS, BATCHELDER, and GIBBONS, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Defendant Christopher O'Non appeals the concurrent 96-month sentences imposed by the district court following his guilty plea to maintaining a drug establishment in violation of 21 U.S.C. § 856 and distribution of marijuana within 1000 feet of an elementary school in violation of 21 U.S.C. § 860.

Defendant asserts that the district court failed to appreciate its authority to depart downward from the advisory guidelines range based on a discharged sentence imposed in state court for conduct related to the federal offense. However, defendant concedes that no motion or request was made for a downward departure before or at sentencing and offers no evidence that would suggest the district court was unaware of its authority to depart downward. Rather, a request was made for credit against the federal sentence for time served on a related state offense, to which the district court properly

responded that the Bureau of Prisons would determine the extent to which any credit for time served was appropriate. Therefore, we **affirm** the sentence imposed by the district court.

**I.**

Beginning in 1997, when defendant and his brother Matthew O'Non were in middle school, they began to distribute marijuana to their middle school and, later, high school classmates. Defendant and his brother continued to obtain and redistribute marijuana and later cocaine into adulthood. In 2003, law enforcement officers found evidence of drug distribution in defendant's garbage outside his residence in Leelanau County, Michigan. They obtained and executed a state search warrant at the residence and recovered over two pounds of marijuana and a digital scale. Investigators arrested defendant when he returned to his residence during the execution of the search warrant. He was convicted of delivery/manufacturing marijuana in state court, and in February, 2004, he was sentenced to nine months in jail and 30 months probation. After committing numerous probation violations, defendant was sent back to jail for twelve months. Defendant continued to sell marijuana to others until his arrest on federal drug charges September 28, 2005.

Federal investigators began targeting defendant and his brother, Matthew O'Non, after the bodies of two Texas-based marijuana suppliers were located buried on land owned by the O'Nons' parents. During the course of the ensuing grand jury investigation, several witnesses testified about the drug trafficking activities of defendant and his brother. Matthew O'Non was eventually tried and convicted of the two murders in state court. Several witnesses testified before the grand jury that defendant helped his brother flee the jurisdiction following the murders. After Matthew O'Non was

convicted of the two murders, he and defendant were indicted in federal court and charged with drug crimes.

Defendant pleaded guilty to maintaining a residence in Suttons Bay, Michigan, for the purpose of distributing and using marijuana in violation of 21 U.S.C. § 856, and to possessing with the intent to distribute marijuana in Traverse City, Michigan, at a location within 1000 feet of an elementary school, in violation of 21 U.S.C. § 860.

The presentence investigation report ("PSR") recommended that defendant's relevant conduct should include 15.2 kilograms of marijuana and no cocaine, resulting in a base offense level of 16 under the guidelines. An enhancement for obstruction of justice was recommended because defendant wrote letters from the jail to several witnesses trying to structure their testimony and because he assisted his brother (and alleged co-conspirator) to flee the jurisdiction after defendant's brother shot and killed their two Texas-based marijuana suppliers. The PSR also recommended a two-level enhancement for possession of a dangerous weapon. Because he obstructed justice, the PSR did not recommend a three-level reduction for "acceptance of responsibility" pursuant to USSG § 3E1.1. Since defendant's criminal history was determined to be category V, defendant's adjusted guidelines range for each count was 63-78 months of imprisonment.

Defendant objected to the drug quantity attributed to him, the two-level enhancement for possessing a dangerous weapon, and the recommendation that he not receive a three-level reduction for acceptance of responsibility. In response, the government argued that defendant's base offense level was too low. Specifically, the government argued that the proposed drug quantity did not include 50 pounds of marijuana that defendant's brother Matthew received shortly before he killed

the two suppliers quantities of cocaine that a third party obtained from defendant's brother after a referral by defendant. The government contended that defendant's total offense level should be 24 rather than 20, resulting in an advisory guidelines range of 92-115 months.

At the August 30, 2006 sentencing hearing, the United States called Special Agent Rob Birdsong of the Federal Bureau of Investigation to the witness stand. In addition to describing the numerous witness statements and grand jury testimony he received during the course of the investigation, Special Agent Birdsong produced several letters that were written by defendant to his friends essentially structuring their respective testimony or statements to investigators. The defense produced no evidence at the sentencing hearing.

The district court sustained defendant's objection to the recommendation of a two-level enhancement for possession of a weapon (combat knife), pursuant to USSG § 2D1.1(b)(1). However, the district court determined that defendant was responsible for at least 100 pounds of marijuana, resulting in a base offense level of 20 instead of 16. Further, the district court determined that defendant had obstructed justice and did not "clearly demonstrate" acceptance of responsibility, as contemplated by USSG §§ 3C1.1 and 3E1.1. Consequently, the district court determined that defendant's total offense level was 22 and his criminal history category was V, resulting in an advisory guidelines range of 77 to 96 months' imprisonment.

Before imposing sentence, the district court noted its duty to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). Specifically, the district court noted that while the duration of the *charged* conduct was only a year or so, defendant's drug distribution activities began some seven or eight years prior to that. The district

court found that defendant's unlawful activity had likely opened the door to greater drug use for a number of his customers. The court sentenced defendant to 96 months of incarceration on each count, to run concurrently, and a term of supervised release of three years on one count and five years on the other, also to run concurrently.

After imposing sentence, the court asked counsel if there were any legal objections to the sentence. Defense counsel responded that defendant "wants me to ask you to give him credit for time served on his prior state charges, twelve months in jail and nine months in a halfway house." The district court responded:

> I'll leave that to the Bureau of Prisons. It has people that can calculate that. They'll have the transcripts of the state and other such matters and they'll have to make that determination. I really can't make that determination.

This exchange between defense counsel and the district court is the linchpin of defendant's appeal and defendant's only evidence that the district court did not appreciate its authority to depart downward.

## II.

Defendant concedes that the request through counsel for a reduced sentence was not explicitly a request for a downward departure, but rather a request for a credit for time served on a state conviction for related conduct. Defendant asserts that his trial counsel appeared to be unaware of the possibility of a downward departure under a section in the guidelines which provides as follows:

> A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

USSG § 5K2.23. Defendant claims that, in addition to trial counsel's ignorance of this section, the district court was also unaware of § 5K2.23, based on the district court's statement that it could not make the determination to credit defendant's sentence for time spent in state custody for conduct related to the instant offense.

This court may not review a *refusal* to grant a downward departure "unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005) (quoting *United States v. Stewart*, 306 F.3d 295, 329 (6th Cir. 2002)) (confirming that this standard survived the change in the sentencing guidelines after *United States v. Booker*, 543 U.S. 220 (2005)). The court reviews *de novo* whether the district court was aware of its authority to depart downward. *United States v. Smith*, 278 F.3d 605, 609 (6th Cir. 2002).

When evaluating whether a district court appreciated its authority, a reviewing court "will presume that the district court understood its discretion to depart, absent clear evidence in the record to the contrary." *United States v. Crouch*, 288 F.3d 907, 910 (6th Cir. 2002) (citing *United States v. Ford*, 184 F.3d 566, 585 (6th Cir. 1999)). "Furthermore, the district court need not explicitly state that it is aware of its discretionary authority to depart downward, since there is 'no duty on the trial judge to state affirmatively that he knows he possesses the power to make a downward departure,

but declines to do so.'" *United States v. Lucas*, 357 F.3d 599, 609-10 (6th Cir. 2004) (quoting

*United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995)).

The statement by the district court that any credit for time served is properly calculated by

the Federal Bureau of Prisons is a correct statement of law. There is simply no evidence on the

record to indicate that the district court did not appreciate its authority to depart downward from the

guidelines range. Absent such evidence, this court is not permitted to review a district court's

decision not to grant a downward departure.

## III.

For the forgoing reasons, the judgment is **AFFIRMED**.