**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0491n.06
Filed: August 13, 2008

**No. 07-3359**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| DOUGLAS E. BERRY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | OPINION |

**Before: DAUGHTREY and GIBBONS, Circuit Judges; ZATKOFF, District Judge.**[*]

**ZATKOFF, District Judge.**   Defendant-Appellant Douglas Berry (Defendant) was convicted by a jury of intentionally distributing 50 grams or more of cocaine base (crack) and conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine and 50 grams or more of crack.  The district court sentenced Defendant to 235 months in prison. Defendant now appeals both his conviction and sentence.  We affirm.

I.

A.

---

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

On March 16, 2006, a federal grand jury issued a Superseding Indictment charging Defendant with the following three counts: (1) Count 1–Conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base between 1999 and March 2005, in violation of 21 U.S.C. § 846; (2) Count 2–Distribution of 50 grams or more of cocaine base on or about October 29, 2003, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) and 18 U.S.C. § 2; and (3) Count 3–Possession with intent to distribute five grams or more of cocaine base on or about February 25, 2005, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) and 18 U.S.C. § 2. On November 13, 2006, the case proceeded to trial in the Southern District of Ohio.

During the course of the trial, the jury heard testimony from three alleged co-conspirators who had pleaded guilty prior to trial: Dante Griffen, Adrian Turner and Tamara Valentine. The majority of this testimony involved each co-conspirator's numerous drug transactions with Defendant between 1999 and March 2005. Griffen, Turner and Valentine each testified that they used Defendant as their primary source of supply for both crack and powder cocaine, which each of them purchased in varying quantities several times per month. The quantities Griffen, Turner and Valentine purchased were "distribution" quantities; that is, Defendant did not sell them cocaine for personal use but for distribution.[1] Defendant would also help the co-conspirators cook the cocaine

---

[1]According to Griffen, and corroborated by Agent Paris Wilson of the Bureau of Alcohol Tobacco and Firearms, quantities measured in ounces and above are known to be "distribution quantities" and not for personal use. JA at 62, 236. Griffen ordinarily purchased drugs from Defendant every other week in quantities ranging from one ounce to half a kilogram. *Id.* at 58-62, 65, 76. Valentine purchased from four-and-a-half to nine ounces of crack or powder cocaine from Defendant as many as four times per week. *Id.* at 195-96, 201. By the time Turner was arrested, he was purchasing up to an ounce at a time, two times per week. *Id.* at 141-42.

from powder to crack and would "front" them the drugs with the understanding that he would be re-paid from the proceeds of further drug sales. On at least one occasion, Defendant drove Adrian Turner to a drug transaction, supplied the drugs for that transaction, and later split the proceeds of the transaction with Turner. Finally, each co-conspirator testified regarding his or her plea bargain with the government, including the facts forming the basis of the plea and prior drug sales that may or may not have involved Defendant. On November 16, 2006, the jury found Defendant guilty as to Counts 1 and 2 of the Superseding Indictment and acquitted him as to Count 3.

B.

The district court held a sentencing hearing on March 15, 2007. Pursuant to the Presentence Investigative Report (PSR), Defendant's advisory Guidelines range was 235 to 293 months in prison; this range was based on an offense level of 36 and a criminal history category III.[2] Prior to sentencing, Defendant filed a motion for a downward departure as well as numerous objections to the PSR. Defendant's motion requested a departure from the advisory Guidelines range due to the 100:1 disparity between crack and powder cocaine (crack/powder disparity). His objections to the PSR challenged all of the relevant conduct findings and maintained his innocence. Defendant also argued that the criminal history category overstated the seriousness of his criminal history.

At the sentencing hearing, the district court addressed each of Defendant's sentencing issues but found that a total offense level of 36 and a criminal history category III were accurate. The

---

[2]The Probation Department used the 2006 edition of the United States Sentencing Commission Guidelines Manual, which was the version of the Guidelines in effect at the time of Defendant's sentencing.

district court also rejected Defendant's argument based on the crack/powder disparity as well as the argument relating to his criminal history. Finally, the district court considered all of the sentencing factors outlined in 18 U.S.C. § 3553(a) in great detail. The district court ultimately found that a sentence within, indeed at the bottom of, the advisory Guidelines range was appropriate and sentenced Defendant to 235 months in prison on each count to be served concurrently.

## II.

## A.

First, Defendant argues that the evidence against him was insufficient to support a conviction for conspiracy. Defendant maintains that the evidence produced at trial supported nothing more than a buyer-seller relationship and that no evidence of conspiracy existed because the three co-conspirators utilized other sources of supply, did not interact with each other, and did not consult with Defendant prior to re-distributing the narcotics. This argument is not persuasive.

When reviewing the sufficiency of the evidence, we must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brown*, 332 F.3d 363, 372 (6th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "A defendant making such a challenge bears a very heavy burden." *United States v. Spearman*, 186 F.3d 743, 745 (6th Cir. 1999). A conviction may be sustained on circumstantial evidence alone, and "such evidence need not remove every reasonable hypothesis except that of guilt." *Id*. (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)).

In order to establish a conspiracy under 21 U.S.C. § 846, "the government must prove, beyond a reasonable doubt, '(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy.'" *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999) (quoting *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996)). Proof of a formal agreement is not necessary to establish a conspiracy; instead, "a tacit or material understanding among the parties" will suffice. *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). While a buyer-seller relationship, on its own, is not enough to establish a conspiracy, "evidence of repeat purchases provides evidence of more than a mere buyer-seller relationship." *Brown*, 332 F.3d at 373; *United States v. Moran*, 984 F.2d 1299, 1303 (1st Cir. 1993) ("A pattern of sales for resale between the same persons, together with details supplying the context for the relationship, might well support a finding of conspiracy."). Indeed, "[d]rug distribution conspiracies are often 'chain' conspiracies such that agreement can be inferred from the interdependence of the enterprise." *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986). In such conspiracies, "[o]ne can assume that participants understand that they are participating in a joint enterprise because success is dependent on the success of those from whom they buy and to whom they sell." *Id.*

We find ample evidence in this case from which the jury could convict Defendant of the conspiracy charge. The evidence showed that the quantities of cocaine that Defendant sold were clearly not for personal consumption, suggesting a conspiracy to distribute. *See Bourjaily*, 781 F.2d at 545 (finding that "[a] large volume of narcotics creates an inference of a conspiracy"). Defendant, furthermore, made such sales frequently and repeatedly over a long period of time, giving even more credence to the fact that he knew Griffen, Valentine, and Turner were in turn distributing. *See*

*Brown*, 332 F.3d at 373; *Moran*, 984 F.2d at 1303. What is more, Defendant provided necessary assistance to Griffen and Valentine by processing the cocaine for them and helping them break it down into marketable quantities. *See United States v. Morris*, 230 F.3d 1361 (table), 2000 WL 1359627, at *4 (6th Cir. Sept. 14, 2000) (noting that evidence that the defendant helped process powder cocaine to crack supported a finding of conspiracy). Finally, we have recognized that "the 'trust' involved in 'fronting' drugs under a delayed payment or credit arrangement 'suggests more than a buyer-seller arrangement between the parties.'" *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) (quoting *United States v. Humphrey*, 287 F.3d 422, 435 (6th Cir. 2002)). As we noted in *Bourjaily*, the jury could infer that Defendant conspired with Griffen, Turner and Valentine based on the evidence that he frequently "fronted" drugs, indicating that Defendant knew his success depended on the success of his buyers. Viewing this evidence in the light most favorable to the prosecution, there was clearly enough evidence for the jury to find Defendant guilty on the conspiracy charge.

Defendant's reliance on the fact that he did not control to whom Griffen, Turner, and Valentine sold the drugs and the fact that he was not their exclusive source of supply is misplaced. "[T]his Court has never held that conspirators must only buy from and/or sell to one individual in order for a 'chain' conspiracy to exist," *United States v. Carver*, 470 F.3d 220, 234 (6th Cir. 2006), nor is control over distribution an element of conspiracy, *see Gibbs*, 182 F.3d at 420 (recognizing that "no threshold level of organizational sophistication is necessary to the formation of a conspiracy"). Likewise, since it is unnecessary that all members of a conspiracy know each other or participate in all activities in furtherance of the conspiracy, *see  United States v. Martinez*, 430

F.3d 317, 332-33 (6th Cir. 2005), Defendant's argument that Griffen, Turner and Valentine did not know each other is unpersuasive. In sum, the circumstantial evidence showing the interdependence between Defendant and the three co-conspirators over a long period of time and involving large quantities of drugs was sufficient to convict him on the conspiracy charge.

B.

Next, Defendant contends that the district court erred in not preventing Griffen, Turner, and Valentine from testifying as to their involvement in drug transactions in which there was allegedly no testimony linking Defendant to the drugs or the transaction. Defendant claims that this testimony was extremely prejudicial because it could have led the jury to convict him based on his association with persons who are involved in the narcotics trade. However, Defendant concedes that all testimony relating to the conspiracy and the discrete transactions charged in the Superseding Indictment was properly admitted. In response, the government points out that all of the testimony at trial either linked Defendant to the conspiracy, was probative of his intent, or was brought out in anticipation of cross-examination. We agree with the government.

Rule 404(b) prohibits the use of "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). On the other hand, evidence of "prior bad acts" is admissible, subject to Rule 403, if it is relevant to any material issue other than character. *Huddleston v. United States*, 485 U.S. 681, 687 (1988). For instance, "other acts" may constitute relevant impeachment information bearing on a witness's bias. *See id.* Moreover, Rule 404(b) does not apply to "other acts" evidence that is "intrinsic" to the charged offense, such as when the other crimes or wrongs evidence is part of a continuing pattern

7

of activity, *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995), or where the other acts

evidence is essential to "permit the prosecutor to offer a coherent and comprehensible story regarding

the commission of the crime," *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002).

The district court's legal determination concerning the admissibility of other acts evidence

for a permissible purpose is reviewed *de novo* and its determination that the probative value of

evidence is not substantially outweighed by the risk of unfair prejudice is reviewed for an abuse of

discretion. *United States v. Myers*, 123 F.3d 350, 362-63 (6th Cir. 1997). Where the defendant has

not specifically and contemporaneously objected to such evidence, the district court's decision is

reviewed for plain error. *See United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000). Contrary

to his assertions, there is no indication in the record that Defendant ever objected to the testimony

given by Adrian Turner and Dante Griffen. Therefore, we review the district court's admission of

this testimony for plain error. On the other hand, Defendant did object to Tamara Valentine's

testimony concerning specific drugs. Therefore, we review the district court's admission of this

testimony for an abuse of discretion.

We conclude that the district court did not commit plain error in admitting the testimony of

Dante Griffen and Adrian Turner. This testimony either provided background information, *see*

*United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (discussing the propriety of introducing

background evidence to complete the story of the charged offense), formed the basis of the

conspirators' plea agreements, *see United States v. Townsend*, 796 F.2d 158, 163 (6th Cir. 1986)

(noting that "[i]ntroduction of the entire plea agreement permits the jury to consider fully the

possible conflicting motivations underlying the witness'[s] testimony and, thus, enables the jury to

more accurately assess the witness'[s] credibility"), or was elicited in anticipation of cross-examination and Defendant's argument that no conspiracy existed due to the lack of exclusivity, *see id.* at 162 (quoting *United States v. Edwards*, 631 F.2d 1049, 1052 (2d Cir. 1980)) ("[C]ourts have consistently recognized that 'the elicitation of the fact of the [plea] agreement and the witness'[s] understanding of it ... should be permitted on direct examination in order to anticipate cross-examination by the defendant which might give the jury the unjustified impression that the Government is concealing this relevant fact."); *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988) ("It may sometimes be useful ... to develop impeaching matter in direct examination of a 'friendly' witness in order to deprive an adversary of the psychological advantage of revealing it to the jury for the first time during cross-examination."). These are permissible purposes under Rule 404(b), and Defendant has not articulated how Turner's or Griffen's testimony was unfairly prejudicial. Moreover, as a result of the district court's timely and specific limiting instructions, any risk of unfair prejudice caused by Turner's or Griffen's testimony did not substantially outweigh its probative value. Thus, the district court did not commit plain error.

Defendant also objects to Tamara Valentine's testimony concerning a transaction in which she sold 123 grams of cocaine but could not recall from whom she obtained the cocaine. This testimony was properly admitted because this transaction and the amount of cocaine formed the basis for Valentine's guilty plea and plea agreement. In addition, the district court gave a detailed limiting instruction following Valentine's testimony and at the close of the case. Therefore, the district court did not abuse its discretion by allowing Valentine's testimony.

In any event, we conclude that any error in allowing these witnesses to testify as to other drug transactions was harmless in light of the overwhelming evidence of Defendant's guilt. *United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001) (finding "any error, if any, in admitting evidence of 'other acts' harmless in light of the overwhelming evidence of Defendant's guilt"). Moreover, the district court's limiting instructions significantly reduced the risk of unfair prejudice from such testimony. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993) (noting that juries are presumed to follow their instructions). As a consequence, any error did not affect Defendant's substantial rights and is not a basis for overturning his conviction.

C.

Defendant next argues that the district court committed reversible error by not giving a buyer-seller instruction in response to a question from the jury. After four hours of deliberations, the jury sent a note to the district court asking: "Is the act of selling drugs equal to conspiracy?" JA at 281. Upon receiving the note, the district court solicited advice from counsel. Defense counsel initially requested that the court simply respond "no" to the question. *Id.* at 281-82. However, after some discussion, the district court and counsel for the government and Defendant agreed that the jury was seeking a definition of conspiracy. *Id.* at 284. Accordingly, counsel and the district court agreed that the appropriate response to the jury's question was to refer the jury to the district court's complete instructions on the conspiracy charge. *Id.* at 285. After further deliberations, the jury convicted Defendant on the conspiracy count. Because counsel for Defendant did not object to the district court's decision to refer the jury to the original instructions on conspiracy, we review the district

court's response to the jury's question for plain error. *United States v. Combs*, 33 F.3d 667, 669 (6th

Cir. 1994).

"When a jury seeks clarification of particular issues ... the judge should clear away its

difficulties with 'concrete accuracy.'" *United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989)

(quoting *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946)). It is generally not sufficient

"for the court to rely on more general statements in its prior charge." *Id.* Rather, "[i]n response to

a jury's question after it has begun deliberating ... a trial judge may and should make clear the law

the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its

decision." *United States v. Rowan*, 518 F.2d 685, 693 (6th Cir. 1975). However, "[i]f the issue that

is the subject of an inquiry has been fully covered in the court's instructions, a reference to or

rereading of the instructions may suffice." *Nunez*, 889 F.2d at 1569. In conspiracy cases such as this,

we have concluded that a "buyer-seller instruction is unnecessary if the district judge has given a

complete instruction reciting all the elements of conspiracy and requirements for membership in a

conspiracy." *Riggs v. United States*, 209 F.3d 828, 833 (6th Cir. 2000); *see also United States v.*

*Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997) ("So long as the jury instruction given by the court

accurately reflects the law on conspiracy, this court will conclude that the buyer-seller relationship

has also been adequately covered.").

The district court's decision to refer the jury back to its original conspiracy instructions was

not plain error because the district court's original instructions fully covered the subject of the jury's

inquiry. The district court's original instructions provided a comprehensive and accurate definition

of conspiracy, focused the jury on the elements of conspiracy and the necessity that there be an

agreement to violate the federal drug laws, instructed that "mere presence, association, knowledge, approval or acquiescence is not sufficient to convict a defendant of conspiracy," and cautioned that "just because the defendant may have done something that happened to help a conspiracy does not necessarily make him a coconspirator." JA at 270-80; *see United States v. Morris*, 47 Fed. Appx. 355, 360-61 (6th Cir. 2002) (concluding the district court did not err, "plain or otherwise," in not giving a buyer-seller instruction where the district court "followed the Sixth Circuit's pattern instructions for a conspiracy offense," which provided "a complete description of such an offense and includ[ed] all of the elements necessary for the government to establish a defendant's involvement in the conspiracy"); *United States v. Daniels*, 135 Fed. Appx. 305, 310 (11th Cir. 2005) (finding that the district court's instruction that "mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy" adequately covered the defendant's requested buyer-seller instruction). Defendant does not question the adequacy or correctness of the district court's original instructions on conspiracy. Consequently, the district court did not commit plain error when it instructed the jury to review its original conspiracy instructions.

The cases Defendant relies on are distinguishable. In *Nunez*, we reversed the defendant's conviction where, unlike the present case, neither the district court's original instructions nor its supplemental instructions addressed the subject matter of the jury's question. *See Nunez*, 889 F.2d at 1569-70. Defendant also relies on the Seventh Circuit's decision in *United States v. Thomas*, 150 F.3d 743 (7th Cir. 1998). But as counsel for Defendant readily conceded during oral argument, the

propriety of a jury instruction depends on the unique facts of the particular case; and unlike this case, where the evidence established far more than a buyer-seller relationship, the totality of the government's evidence in *Thomas* showed, at most, three discrete transactions between the defendant and a government witness involving small quantities of cocaine. *Id.* at 745. *But see United States v. Askew*, 403 F.3d 496, 505 (7th Cir. 2005) (concluding that the district court did not err in failing to give a buyer-seller instruction *sua sponte* where it would not have changed the outcome of the trial, "considering the relative strength of the evidence against [the defendant]"). Based on the facts of this case and the district court's complete and accurate jury instructions on the law of conspiracy, we conclude that it was not plain error for the district court to refer the jury back to its original instructions.

## D.

Finally, Defendant challenges the district court's sentence on three grounds. First, Defendant argues that a criminal history category III overstates the seriousness of his criminal history. With respect to this argument, Defendant challenges the district court's decision to deny a downward departure and its effect on the length of his sentence. Second, Defendant contends that his sentence is unreasonable because the district court did not categorically reject the 100:1 crack/powder disparity contained in the advisory Guidelines. As a result, Defendant contends that his sentence is unconstitutional and unreasonably long. Finally, Defendant argues that a sentence of 235 months in prison is unreasonably high in light of the sentences given to other co-conspirators.

We review the district court's sentence for procedural and substantive reasonableness. *See United States v. Booker*, 543 U.S. 220, 261 (2005); *United States v. Williams*, 432 F.3d 621, 623 (6th

Cir. 2005). A reviewing court must give due deference to a district court's sentencing decision and may not reverse simply because it would have imposed a different sentence. *Gall v. United States*, ___ U.S. ___, 128 S. Ct. 586, 597-98 (2007). Because Defendant's sentence is within the advisory Guidelines range, we presume it is reasonable. *Rita v. United States*, ___ U.S. ___, 127 S. Ct. 2456, 2462 (2007). We conclude that Defendant has failed to rebut this presumption and that his sentence is neither procedurally nor substantively unreasonable.

1.

Defendant contends that the district court erred when it refused to grant a downward departure because his criminal history category substantially over-represented the seriousness of his criminal history. Notably, Defendant does not appeal the district court's calculation of the criminal history category; instead, Defendant merely argues that the district court should have exercised its discretion under the advisory Guidelines and departed from this otherwise correct calculation. This argument has no merit.

Under the Guidelines, a district judge may grant a downward departure, "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history ...." U.S.S.G. § 4A1.3(b). We have held that a refusal to grant a downward departure pursuant to § 4A1.3(b) of the Guidelines is not reviewable "unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005) (confirming that this standard survived the change in the Guidelines after *Booker*); *accord United States v. O'Non*, 268 Fed. Appx. 454, 457 (6th Cir. 2008).

14

The record shows that the district court heard Defendant's argument that his criminal history category over-represented the seriousness of his criminal history, considered it, and rejected it as a basis for a downward departure. In doing so, the district court clearly recognized its authority to depart and simply declined to do so based on the evidence presented. Therefore, the district court's decision not to depart pursuant to § 4A1.3(b) of the Guidelines is not reviewable.

Defendant's argument also lacks merit to the extent that he argues that the district court should have given more consideration to any over-representation of his criminal history under § 3553(a). The district court clearly considered Defendant's argument, finding that Defendant's criminal history did not involve violence and considering it a "point well made." JA at 336-37. Nevertheless, the district court determined that the lack of violence in Defendant's past did not merit a lower sentence when considered against other § 3553(a) factors such as the seriousness of the instant offense. *Id.* Therefore, the district court did not abuse its discretion in refusing to vary from the advisory Guidelines range based on Defendant's criminal history.

2.

Defendant next challenges the propriety of his sentence based on the 100:1 crack/powder disparity. Namely, Defendant argues that the crack/powder disparity is unconstitutional and that by relying on the disparity when formulating his sentence, the district court fashioned a sentence that is greater than necessary to achieve the purposes of sentencing outlined in § 3553(a). Defendant urges us to remand this case for resentencing in light of the Supreme Court's decision in *Kimbrough v. United States*, ___ U.S. ___, 128 S. Ct. 558 (2007).

15

Defendant's constitutional argument is unpersuasive. We have consistently held that the crack/powder disparity withstands constitutional scrutiny, including challenges based on due process, equal protection, and the Eighth Amendment. *See United States v. Blair*, 214 F.3d 690, 702 (6th Cir. 2000), *cert. denied*, 531 U.S. 880 (2000); *United States v. Bingham*, 81 F.3d 617, 630-31 (6th Cir. 1996) (equal protection); *United States v. Hill*, 79 F.3d 1477, 1488-89 (6th Cir. 1996) (Eighth Amendment and equal protection); *United States v. Pickett*, 941 F.2d 411, 418-19 (6th Cir. 1991) (Eighth Amendment and substantive due process). *Kimbrough* said nothing to suggest otherwise and provides no reason to reconsider our constitutional rulings on the facts of this case.

Next, Defendant maintains that the district court erred by using the crack/powder disparity when calculating his advisory Guidelines range. However, the district court was obligated to do so. *See United States v. Asher*, 239 Fed. Appx. 180, 184 (6th Cir. 2007). The Supreme Court has made clear that the starting point of a reasonable sentence is a correct calculation of the advisory Guidelines range. *See Kimbrough*, 128 S. Ct. at 574. "Only after computing the guidelines range using the correct 100:1 ratio does the district judge have discretion to impose a sentence that is above or below that range." *Asher*, 239 Fed. Appx. at 184 (quoting *United States v. Wallace*, 458 F.3d 606, 611 (7th Cir. 2006)) (internal quotation marks omitted). The district court properly calculated Defendant's advisory Guidelines range based on the correct Guidelines, which included the crack/powder disparity. Therefore, the district court did not err in this regard.

Defendant's final argument relates to the district court's discretion to vary from the advisory Guidelines range based on the § 3553(a) factors. Defendant argues that the district court should have sentenced him below the advisory Guidelines range based solely on the fact that the Guidelines range

was calculated using the 100:1 crack/powder disparity. In other words, the district court did not accord proper weight to the pervasive criticism of the crack/powder disparity. This argument is also not persuasive.

In *Kimbrough*, the Supreme Court stated that "it would not be an abuse of discretion for the district court to conclude when sentencing *a particular* defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 128 S. Ct. at 575 (emphasis added). According to the court, the ultimate question was "whether the sentence was reasonable–*i.e.*, whether the District Judge abused his discretion in determining that the § 3553(a) factors supported a sentence of [15 years] and justified a substantial deviation from the Guidelines range." *Id.* at 576 (quoting *Gall*, 128 S. Ct. at 600) (internal quotation marks omitted). In affirming the sentence, the court reaffirmed its mandate that "district courts must treat the Guidelines as the 'starting point and the initial benchmark'" when formulating a reasonable sentence. *Id.* at 574. Specifically, the court noted that "the [district court] did not purport to establish a ratio of its own" but "appropriately framed its final determination in line with § 3553(a)'s overarching instruction ...." *Id.* at 576. As such, the court did not hold that the crack/powder disparity, or a sentence based on the disparity, was unreasonable *per se*; the Guidelines are instead merely the starting point for a nuanced assessment of each individual case and the appropriateness of the Guidelines sentence must be judged against the other factors in § 3553(a). *Id.* at 570 ("In sum, while the statute still requires a court to give respectful consideration to the Guidelines ... *Booker* 'permits the court to tailor the sentence in light of other statutory concerns as well.'"). Thus, the Supreme Court made clear that the district court's authority to deviate from the crack/powder

disparity was not based on the disparity itself or the court's assessment, in isolation, of the rationales behind the disparity but the district court's overarching duty under § 3553(a) to craft a sentence that is sufficient but not greater than necessary to achieve § 3553(a)'s purposes. Stated differently, "a district court may not employ a 'rubber stamp' approach that categorically rejects the crack/powder disparity without an individual assessment of the § 3553(a) factors and the facts of a particular case." *United States v. Gunter*, 527 F.3d 282, 286 (3d Cir. 2008).

Consistent with *Kimbrough*, our precedent permits a district court to vary from the advisory Guidelines based on a disagreement with the crack/powder disparity, not simply for the sake of disagreement, but where the district court concludes that the crack/powder disparity produces a sentence that is greater than necessary in light of all the other considerations enumerated in § 3553(a). We have recognized that "while a departure from the 100:1 ratio may well be *reasonable in a particular case*, applying the ratio does not, *ipso facto*, make a sentence unreasonable ...." *Carver*, 470 F.3d at 249 (emphasis added). Thus, a district court is not permitted to categorically reject the advisory Guidelines but must do so based on a reasoned disagreement tied to the sentencing considerations in § 3553(a). *See Kimbrough*, 128 S. Ct. at 575-76 (noting that the district court "properly homed in on the particular circumstances of Kimbrough's case"). Necessarily then, a district court may appropriately decide to not deviate from the Guidelines where it does not find that the factors in § 3553(a) justify a different result, which is precisely what occurred in this case.

Defendant's arguments on appeal are essentially identical to those he presented to the district court in his motion for a downward departure and at the sentencing hearing. Defendant explained in great detail that the original rationales for the crack/powder disparity have largely been

undermined and argued that his sentence should be shorter because it was based, in part, on this disparity. However, Defendant did not articulate any facts or circumstances to suggest that the crack/powder disparity produced an unreasonable sentence in this particular case. In essence, Defendant asked the district court, and now asks this Court, to categorically reject the crack/powder disparity without considering his individual circumstances. *Kimbrough* does not permit such a result.

Notwithstanding Defendant's argument, the district court gave appropriate consideration to the crack/powder disparity. When viewing the sentencing hearing as a whole, along with the PSR and the parties' objections and responses, it is clear that the district court was aware of its authority to vary from the Guidelines based on a reasoned disagreement with the crack/powder disparity and simply concluded that such a variance was not warranted in light of the other § 3553(a) factors. Importantly, in rejecting Defendant's invitation to ignore the advisory Guidelines, the district court did not, as Defendant insinuates, treat the Guidelines as mandatory. The district court recognized "that the guidelines are *just one element* that I take into consideration, and they *shouldn't be given any more special weight* than that of these [§ 3553(a)] elements I'm reviewing right now." JA at 339 (emphasis added). Thereafter, the district court considered Defendant's argument regarding the crack/powder disparity and rejected it, concluding that "taking into consideration the § 3553(a) factors, the facts of this particular case, and the presentence investigation report, as well as the professional arguments made by both counsel, the Court finds that the sentence to be imposed is sufficient but not greater than necessary to comply with the purposes of sentencing in this matter." *Id.* at 342. Thus, the district court carefully considered the crack/powder disparity as it applied to

19

this case and rejected it as a basis for imposing a lower sentence because the Guidelines sentence comported with the overall goals of sentencing. This is all that is required of a sentencing court. *See, e.g.*, *United States v. Vowell*, 516 F.3d 503, 509-13 (6th Cir. 2008) (noting that it could not "ask more of a district court, in terms of weighing the § 3553(a) factors and explaining the reasons for its sentence" where the court expressly considered the advisory Guidelines, the parties' arguments, and the § 3553(a) factors, and explained why its sentence was sufficient but not greater than necessary in relation to each consideration).

Because the district court did not treat the crack/powder disparity as mandatory and weighed the disparity along with the other pertinent § 3553(a) factors, we conclude that Defendant's sentence is not unreasonable. After such a thorough and thoughtful sentencing analysis, it is highly unlikely that *Kimbrough's* permissive holding would change the district court's sentencing decision.[3]

3.

Defendant lastly argues that his sentence is unreasonable when compared to the sentences given to Dante Griffen, Adrian Turner and Tamara Valentine. Defendant maintains that the district court did not give appropriate weight to the difference between his 235-month sentence and the shorter sentences received by his co-conspirators. We disagree.

---

[3]While this appeal was pending, Defendant filed a motion in the district court pursuant to 18 U.S.C. § 3582(c), which will allow the district court to reconsider Defendant's sentence in light of the recent amendments to the crack cocaine Guidelines. Accordingly, given our disposition of this issue and the fact that the district court will have an opportunity to reconsider its sentence, we see no reason to remand this case for resentencing.

Section 3553(a)(6) requires the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *United States v. Conaster*, 514 F.3d 508, 521 (6th Cir. 2008). This factor "concerns *national* disparities between defendants with similar criminal histories convicted of similar conduct–not disparities between codefendants." *Conaster*, 514 F.3d at 521 (emphasis in original). "Disparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *Id.* at 522.

The record shows that the district court gave significant consideration to the sentencing disparities in this case and nationally, distinguished Defendant's conduct from that of his co-conspirators (specifically noting the fact that the co-conspirators pleaded guilty and received credit for cooperating with the government), and properly exercised its discretion. Accordingly, it was not unreasonable for the district court to conclude that the disparities among co-conspirators in this case were not unwarranted.

III.

For the foregoing reasons, Defendant's conviction and sentence are AFFIRMED.